UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

APOLLO HOLDING COMPANY, LLC, *et al.*          CIVIL ACTION

VERSUS          NO. 24-2773

CLIFF ROE, *et al.*          SECTION M (3)

## ORDER & REASONS

Before the Court are motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Rule 12(b)(3), and failure to state a claim pursuant to Rule 12(b)(6) filed by each of defendants Cliff Roe,[1] Bohr Energy, LLC ("Bohr Energy"),[2] and Kevin Pavlov[3] (collectively, "Defendants"). Plaintiffs Apollo Holding Company, LLC ("Apollo") and GAPS Technology, LLC ("GAPS") (together, "Plaintiffs") respond in opposition to each,[4] and Defendants reply in further support of their motions.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

This case involves claims of fraudulent inducement, breach of contract, and unfair trade practices. Apollo is a Delaware LLC authorized to conduct business in Louisiana and its members are Louisiana citizens.[6] GAPS is a Louisiana LLC wholly owned by Apollo.[7] Roe and Pavlov are Michigan residents and the members of Bohr Energy, a Florida LLC with its principal place of business in Michigan.[8]

---

[1] R. Doc. 15.
[2] R. Doc. 16.
[3] R. Doc. 17.
[4] R. Docs. 21 (opposing Roe's motion); 22 (opposing Pavlov's motion); 23 (opposing Bohr Energy's motion).
[5] R. Docs. 31 (Roe's reply); 32 (Bohr Energy's reply); 33 (Pavlov's reply).
[6] R. Doc. 2-1 at 1.
[7] *Id.* at 1, 3.
[8] R. Docs. 2-1 at 1; 16-1 at 7; 16-3 at 1.

Roe was hired by Apollo's predecessor-in-interest, Apollo Petroleum Solutions, LLC ("APS") in 2016.[9]  On January 29, 2016, Roe executed an employment agreement (the "Employment Agreement") with APS in Covington, Louisiana.[10]  As part of the Employment Agreement, Roe agreed to

> sell[] all of [his] equipment, demo units, devices, applications, intellectual property, patents pending and other property whether related to the Advanced Separation Gas Infusion System, which [Roe] developed, or otherwise. This conveyance specifically includes all of [Roe's] property and systems [then] currently in development and developed in the future, whether the Gas Infusion System or any other related or unrelated technology.  This conveyance also includes any use [then] currently known or unknown for the intellectual property conveyed.[11]

In 2017, Roe relocated from Michigan to Slidell, Louisiana, to work in APS's laboratory in Picayune, Mississippi.[12]  Thereafter, APS underwent a corporate restructuring to form Apollo, which assumed all of APS's obligations to Roe under the Employment Agreement,[13] including paying for Roe's living expenses in Louisiana.[14]  As part of its restructuring, APS conveyed to GAPS all rights, titles, and interests it acquired from Roe under the Employment Agreement, and GAPS licensed all of its intellectual property to Apollo.[15]  Plaintiffs also allege that "Roe executed further assignments over the years that assigned provisional patents and applications to GAPS, which was, in turn, subject to the licensing arrangement between GAPS and Apollo."[16]

In 2023, AlumaPower Corporation ("AlumaPower") became interested in Apollo's technology.  AlumaPower sent Pavlov to meet with Roe at Apollo's Mississippi laboratory on April 18, 2023, to discuss a possible business relationship with Apollo.[17]  On January 18, 2023,

---

[9] R Doc. 2-1 at 2.
[10] *Id.*; R. Docs. 15-1 at 7; 21 at 8; 21-1 at 1.  *See infra* note 74.
[11] R. Doc. 15-4 at 2.
[12] R. Docs. 21 at 3; 21-1 at 1.
[13] R. Doc. 2-1 at 3.
[14] R. Docs. 15-4 at 1; 21-1 at 2.
[15] R. Doc. 2-1 at 3.
[16] *Id.*
[17] *Id.*; R. Doc. 15-1 at 12.

2

before meeting with Roe, Pavlov had signed a nondisclosure agreement (the "First NDA") with Apollo.[18]  On April 17, 2023, the day before Roe and Pavlov's meeting, AlumaPower, through its CEO, signed another NDA with Apollo (the "Second NDA").[19]  No business arrangement between Apollo and AlumaPower resulted from Roe and Pavlov's April 18, 2023 meeting.[20]

Roe voluntarily ended his employment with Apollo on July 31, 2023.[21]  Plaintiffs allege that Roe told them he was retiring due to his poor health.[22]  Roe and Plaintiffs executed a voluntary separation agreement (the "Separation Agreement") on March 29, 2024.[23]  Plaintiffs allege that their agreement to the terms of the Separation Agreement was induced by Roe's representation that he would be retiring from the oil and gas industry.[24]  However, on May 13, 2024, Roe and Pavlov formed Bohr Energy.[25]  In September of 2024, Roe and Plaintiffs amended the Separation Agreement to modify Plaintiffs' payment obligations to Roe (the "Amendment").[26]  Plaintiffs allege that "Roe continued to maintain that he was staying out of the oil and gas treatment industry" and they relied on that representation when agreeing to the Amendment.[27]

On November 1, 2024, Plaintiffs brought this action in the 22nd Judicial District Court of St. Tammany Parish, Louisiana, asserting a fraudulent-inducement claim against Roe, breach-of-contract claims against Roe and Pavlov, and claims under the Louisiana Unfair Trade Practices

---

[18] R. Docs. 2-1 at 4; 17-10.  The First NDA included a forum-selection clause stating that:

The [p]arties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the state and federal district courts which govern the Parish of St. Tammany, State of Louisiana, and waive any objection to forum or venue and agree to accept service of process by mail in any action arising out of this Agreement.

R. Doc. 17-10 at 7.

[19] R. Doc. 17-11.  The Second NDA has a Delaware forum-selection clause.  *Id.* at 5.

[20] R. Doc. 15-1 at 12.

[21] R. Doc. 2-1 at 4.

[22] *Id.*

[23] R. Doc. 15-7.

[24] R. Doc. 2-1 at 6.

[25] R. Doc. 15-1 at 13.

[26] R. Docs. 2-1 at 4; 15-8.

[27] R. Doc. 2-1 at 5.

Act, La. R.S. 51:1401-1430 ("LUTPA"), against all three Defendants.[28]  Plaintiffs allege that Roe falsely represented "that he was retiring when, in fact, he was actively competing against [Plaintiffs and] intended for this misrepresentation to induce [them] to agree to" the Separation Agreement and the Amendment;[29] that Roe breached the Employment Agreement, as well as the Separation Agreement and Amendment (assuming they are not rescinded due to fraudulent inducement), by using the intellectual property that he transferred to Plaintiffs without their authorization;[30] that Pavlov breached the First NDA by "using the disclosed, proprietary information and intellectual property to compete against Apollo" through Bohr Energy;[31] and that Roe and Pavlov "actively engaged in fraudulent conduct to … receive benefits from [Plaintiffs and] misuse proprietary information that [Plaintiffs] ha[ve] exclusive ownership interests in," with Bohr Energy benefitting from, and participating in, this "misuse" of Plaintiffs' proprietary information, all in violation of LUTPA.[32]  Defendants removed this case to this Court on November 27, 2024,[33] and now move to dismiss all of Plaintiffs' claims against them.

## II.    LAW & ANALYSIS

### A.  Legal Standards

#### 1.  Rule 12(b)(2) Standard

"As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional issues before considering whether a claim was stated by the complaint, although there is no requirement that jurisdictional issues be considered in a particular order."  5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER,

---

[28] *Id.* at 5-8.
[29] *Id.* at 5-6 (quotes at 6).
[30] *Id.* at 6-7.
[31] *Id.* at 7.
[32] *Id.*
[33] R. Doc. 2.

FEDERAL PRACTICE AND PROCEDURE § 1351, at 244-46 (4th ed. 2024). Therefore, the Court will first consider whether it has personal jurisdiction over Defendants.

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 584 (1999) (quotation and alteration omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts must be resolved in favor of the plaintiff. *Thompson v. Chrysler Motors Corp*., 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Louisiana's long-arm statute extends to the limits of due process, the two inquiries collapse into the single inquiry whether the exercise of personal jurisdiction comports with due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

An individual's liberty interest is protected by federal due process through the requirement "that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (alteration omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). For

purposes of personal jurisdiction, the due-process inquiry looks at whether the defendant has purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" with the forum, and whether the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The inquiry thus focuses "on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation omitted).

"There are two kinds of personal jurisdiction: 'general or all-purpose jurisdiction' and 'specific or case-linked jurisdiction.'" *Daughtry v. Silver Fern Chem., Inc.*, 2025 WL 1364806, at *3 (5th Cir. May 12, 2025)) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For a court to exercise general jurisdiction, the defendant's contacts with the forum must be "so continuous and systematic" as to render the defendant "at home" in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*, 564 U.S. at 919).  "'For an individual, the paradigm forum for the exercise of general jurisdiction is an individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 924).  Neither of the individual defendants is domiciled in Louisiana or has continuous and systematic contact with the state.  Bohr Energy, an LLC, has no members who are Louisiana citizens, nor does it maintain its principal place of business in Louisiana.  Plaintiffs have not presented any arguments, or evidence, to the contrary.  Thus, this Court lacks general jurisdiction over Defendants.

Specific jurisdiction exists when a defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In analyzing specific jurisdiction, courts employ a three-prong test to determine (1) whether the defendant purposefully directed its activities at the forum and availed itself of the privilege of doing business there, (2) whether the claim arises out of or results from the defendant's forum-related contacts, and (3) whether the exercise of personal jurisdiction is reasonable and fair. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895-96 (5th Cir. 2022). After the plaintiff establishes the first two factors, which correspond with the "minimum contacts" prong of *International Shoe*, the burden shifts to the defendant to demonstrate that an exercise of personal jurisdiction would be unfair or unreasonable. *Burger King Corp.*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). In determining reasonableness, a court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292. Specific jurisdiction is a claim-specific inquiry, and a court must analyze each defendant's forum-related contacts on a claim-by-claim basis. *Savoie v. Pritchard*, 122 F.4th 185, 194 (5th Cir. 2024); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022).

### 2. Rule 12(b)(3) Standard

Rule 12(b)(3) permits a party to move the district court to dismiss for "improper venue."

Fed. R. Civ. P. 12(b)(3).  Generally, venue must be established for each cause of action and each defendant.  *See Holliday v. Goodell*, 2025 WL 721307, at *3 (E.D. La. Mar. 6, 2025) (citing *Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 589 (E.D. La. 2013)).  When considering a motion to dismiss for improper venue, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  *Damon J. Baldone, APLC v. Moore*, 2024 WL 4436635, at *2 (E.D. La. Oct. 7, 2024) (quotation omitted).  Further, "Rule 12(b)(3) permits the court to look at all evidence in the record 'beyond simply those facts alleged in the complaint and its proper attachments.'"  *Id.* (quoting *Lighthouse MGA, L.L.C. v. First Premium Ins. Grp., Inc.*, 448 F. App'x 512, 514 (5th Cir. 2011)).

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)," *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013), including "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).  Here, Defendants are residents of Michigan, so venue is not proper in this district under § 1391(b)(1).  And Plaintiffs do not invoke the third basis for venue as set out in § 1391(b)(3).  Instead, Plaintiffs argue that a substantial part of the events giving rise to each of their claims occurred in this district, and that venue is therefore proper under § 1391(b)(2).[34]

---

[34] *See* R. Docs. 21 at 12-14; 22 at 9-12; 23 at 8-9.

### 3. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint

whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Fraudulent-Inducement Claim**

### 1. The Court has personal jurisdiction over the fraudulent-inducement claim against Roe.

Roe contends that this Court lacks personal jurisdiction over Plaintiffs' fraudulent-inducement claim against him for the same reasons he says it lacks jurisdiction over their breach-of-contract claim against him, as both "claims arise from the … Separation Agreement and the Amendment."[35]    He argues that neither the Separation Agreement nor the Amendment was executed in Louisiana or required Roe to render performance in Louisiana, and that no "part of the actions giving rise to these claims involved the state of Louisiana."[36]    He further argues that he was no longer working for Plaintiffs when the Separation Agreement and Amendment were executed, and "[m]erely contracting with a resident of a forum state is not enough to create the minimum contacts necessary to confer personal jurisdiction."[37]    While the fraudulent-inducement claim relates to the formation of the Separation Agreement and Amendment, it is not subject to the same personal-jurisdiction analysis as Plaintiffs' breach-of-contract claim pertaining to those agreements.    As Plaintiffs point out,[38] "the considerations for personal jurisdiction over fraud claims are different from those [courts] apply in a straight contract claim."    *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492 (5th Cir. 2018).    Plaintiffs therefore argue that the test applied by the Fifth Circuit in *Trois* applies to their fraudulent-inducement claim, and that under that test, they have established personal jurisdiction over Roe.[39]    The Court agrees.

---

[35] R. Doc. 15-1 at 18-19.
[36] *Id.* at 19.
[37] *Id.* (citing *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 329 (5th Cir. 2014)).
[38] R. Doc. 21 at 8.
[39] *Id.* at 8-9.

One of the defendants in *Trois* made misrepresentations about his auction business during a conference call that he joined from Ohio and the plaintiff joined from Texas. Relying on those misrepresentations, the plaintiff contracted with the defendant to sell some collectibles through the defendant's business in Ohio. *Id.* at 487-88. The Fifth Circuit upheld the Texas district court's exercise of personal jurisdiction over the fraud claim against the defendant, even though it also affirmed the district court's determination that it lacked personal jurisdiction over the breach-of-contract claim against him that arose from the same transaction. In its minimum-contacts analysis of the fraud claim, the court explained that the defendant

> was not a passive participant on the call. Instead, he was the key negotiating party who made representations regarding his business in a call to Texas. It [was] that intentional conduct on the part of [the defendant] that led to this litigation. So [he was] not being haled into Texas court "based on his random, fortuitous, or attenuated contacts." … In other words, the defendants reached out to the forum, which led to this litigation, so we have focused on the correct relationship here, *i.e.* the defendants and the forum.

*Id.* at 491-92 (internal quotation marks and alteration omitted) (quoting *Walden*, 571 U.S. at 286).

In his reply, Roe asserts that *Trois* is "an exception to the general rule, in which that defendant expressly reached out to Texas for the purpose of developing business, and in the course of the call made allegedly false representations with the intent to induce that business to occur."[40] To the contrary, *Trois* represents the appropriate "minimum-contacts test for personal jurisdiction in fraud" which, as the Fifth Circuit made clear, "differs from that in contract." *Id.* at 490. Roe further argues that "*Trois* is inapposite because (a) the parties here were not attempting to generate new business in Louisiana and (b) Plaintiffs failed to identify a single communication forming the basis for their claims."[41] Roe fails to explain why the objective of fraudulent conduct directed at a forum resident – whether it be to generate new business from the forum-state resident, as in *Trois*,

---

[40] R. Doc. 31 at 3.
[41] *Id.*

or to induce the forum-state resident to accept contract terms more favorable to the defendant, as Plaintiffs allege here – should have any bearing on the Court's application of the minimum-contacts test articulated in *Trois*. And Roe's argument that "Plaintiffs failed to identify a single communication forming the basis for their claims" goes to the sufficiency of the claim, which the Court will address in its analysis of his Rule 12(b)(6) motion.[42]

Roe, like the defendant in *Trois*, is alleged to have reached out to Plaintiffs in Louisiana to negotiate the Separation Agreement and, in the course of those negotiations, made misrepresentations with the intent to induce Plaintiffs to agree to more favorable terms. Such intentional conduct, directed at a resident in the forum, establishes minimum contacts for intentional tort claims. *See id.* at 491-92; *Walden*, 571 U.S. at 286 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes powerful availment."). Accordingly, Plaintiffs have shown that this Court has personal jurisdiction over their fraudulent-inducement claim against Roe by alleging that he directed a misrepresentation to them in Louisiana, and his motion to dismiss this claim for lack of personal jurisdiction is therefore denied.

### 2. Venue is proper for the fraudulent-inducement claim.

Roe argues that venue is improper for all of Plaintiffs claims because Defendants are all Michigan residents and the alleged conduct giving rise to Plaintiffs' claims occurred outside of

---

[42] *See infra* § II(B)(3). "'A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

Louisiana.[43]  Plaintiffs, again relying on *Trois*, contend that venue is proper in this district for their fraudulent-inducement claim because "Roe's actions and communications with Plaintiffs in the district satisfies the substantial part of the events giving rise to the claim."[44]  Indeed, the Fifth Circuit in *Trois* affirmed that "the direction of fraudulent misrepresentations alone can be enough to establish venue for a fraud claim where that claim derives from the communications."  882 F.3d at 494.  There, "although a substantial part of the events giving rise to the *breach-of-contract* claim – contract execution and the defendants' performance – took place in Ohio," the Fifth Circuit held that venue was proper in Texas because "a substantial part of the events giving rise to the *fraud* claim – the misrepresentations – took place in a business call to Texas."  *Id.* at 493 (emphasis in original).  Likewise, here, while the Separation Agreement and Amendment were not executed in Louisiana, a substantial part of the events giving rise to the claim that Plaintiffs were fraudulently induced to sign those agreements – Roe's alleged misrepresentation that he was retiring – was directed to Plaintiffs in Louisiana.  Thus, venue is proper in Louisiana for the fraudulent-inducement claim, and Roe's motion to dismiss this claim for improper venue is denied.

### 3. Plaintiffs' fraudulent-inducement claim fails to meet the heightened pleading requirements of Rule 9(b).

Roe also argues that Plaintiffs' fraudulent-inducement claim fails as a matter of law because it is predicated "on the alleged reliance on a pre-contractual representation" and the Separation Agreement and Amendment each contain a merger or integration clause stating that they "'supersede[] and replace[] all other oral and written negotiations, agreements and understandings'" between the parties.[45]  Plaintiffs respond that, because they allege that Roe's "misrepresentation caused the [Separation Agreement] to be entered into fraudulently," his "using

---

[43] R. Doc. 15-1 at 20.
[44] R. Doc. 21 at 12.
[45] R. Doc. 15-1 at 21 (quoting R. Docs. 15-7 at 2; 15-8 at 2).

the fraudulently induced contract to show that the contract was not fraudulently entered into is ...

illogical."[46]  In his reply, Roe maintains that "Plaintiffs' fraudulent inducement claim, as pled, is

prohibited by law" because Plaintiffs failed to plead sufficient facts to support a fraud claim, "fraud

cannot be predicated on statements that are promissory in nature or relating to future events," and

Plaintiffs disclaimed any claim of reliance on the alleged misrepresentation by assenting to the

broad integration clauses contained in the Separation Agreement and Amendment.[47]

The elements of a fraudulent-inducement claim under Louisiana law[48] are "(1) a

misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust

advantage or to cause damage or inconvenience to another; and (3) the error induced by a

fraudulent act must relate to a circumstance substantially influencing the victim's consent to the

contract." *Env't, Safety & Health Consulting Servs. v. Crest Energy Partners, L.P.*, 2015 WL

2452458, at *4 (E.D. La. May 21, 2015) (citing *Shelton*, 798 So. 2d at 64; La. Civ. Code art. 1953).

Here, Plaintiffs have alleged in their complaint that Roe misrepresented his reason for terminating

his employment, specifically, by "represent[ing] that he was retiring when, in fact, he was actively

competing against [Plaintiffs]," which he intended would "induce [them] to agree to enter not only

the Voluntary Separation Agreement but also the Amendment," and that they "would not have

agreed to enter either the Voluntary Separation [Agreement] or the Amendment thereto if they had

---

[46] R. Doc. 21 at 16.

[47] R. Doc. 31 at 7-8.

[48] Neither the Separation Agreement nor the Amendment contains a choice-of-law clause.  *See* R. Docs. 15-7; 15-8. Roe does not argue that the law of another state should apply and cites to Louisiana caselaw in support of his arguments against Plaintiffs' breach-of-contract claims.  *See* R. Doc. 15-1 at 21 (citing *French Quarter Realty v. Gambel*, 921 So. 2d 1025, 1029 (La. App. 2005)); 31 at 7-8 (citing *Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001); *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So. 3d 246, 255 (La. App. 2009); *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 230 (5th Cir. 2018) (applying Louisiana law)).  Therefore, the Court assumes, without deciding, for purposes of this motion that Louisiana law applies to the Separation Agreement and Amendment.

known that the representation was false."[49]  In this way, Plaintiffs have only generally pleaded the legal elements of a claim for fraudulent inducement.

However, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997).  Put simply, complying with Rule 9(b) requires a plaintiff to "set forth the 'who, what, when, where, and how' of the alleged fraud."  *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quotation omitted).  Thus, a plaintiff alleging fraud "cannot rely on speculation or conclusional allegations."  *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008).

Here, Plaintiffs' fraudulent-inducement claim does not meet Rule 9(b)'s heightened standard.  Plaintiffs only identify the general content of Roe's alleged misrepresentation – "that he was voluntarily ending his employment because of his poor health and desire to retire"[50] – and vaguely allege that he made this representation when he terminated his employment in July 2023,[51] and again "when he started negotiations for the Voluntary Separation Agreement and the Amendment,"[52] which could have been as early as July 2023 or as late as September 2024.  Aside from asserting in their opposition to Roe's motion that the misrepresentation was made "to the

---

[49] R. Doc. 2-1 at 5-6 (quotes at 6).
[50] *Id.* at 4.
[51] *Id.*
[52] *Id.* at 5.

Louisiana-based executive team of Plaintiffs,"[53] they do not specify to whom these representations were made and when. Neither do Plaintiffs specify how the alleged misrepresentations were communicated. Thus, because Plaintiffs have failed to "set forth the 'who, what, when, where, and how' of the alleged fraud," *Bell Helicopter Textron*, 417 F.3d at 453 (quotation omitted), the Court grants Roe's motion to dismiss this claim under Rule 12(b)(6), but without prejudice to Plaintiffs' amending their complaint to plead their fraudulent-inducement claim with sufficient particularity.

The Court rejects Roe's arguments that Plaintiffs' fraudulent-inducement claim fails as a matter of law and that amendment is therefore futile.[54] As to his argument that the integration clauses act as non-reliance clauses, thereby precluding Plaintiffs' allegation that they relied on Roe's representation that he was retiring, Roe concedes that "Louisiana courts have not issued a published opinion on the issue of whether a non-reliance clause precludes a claim for fraud in the inducement when the alleged misrepresentation is outside the four corners of the agreement."[55] The Louisiana supreme court has ruled, however, that "[f]raud in the inducement of a contract cannot be waived." *Shelton*, 798 So. 2d at 64. Even if waiver of fraudulent-inducement claims were permitted under Louisiana law, Roe's argument that "[t]he integration clauses [here] are broader than a traditional integration clause, which would merely confirm that the agreement 'constitutes the entire agreement'" because they "provide that they 'supersede and replace all other oral and written negotiations, agreements, and understandings between [the parties]'"[56] is dubious. A court in this district, applying Louisiana law, held that an integration clause specifically disclaiming any "inducement" not expressed in the agreement, did not bar the plaintiff from

---

[53] R. Doc. 21 at 9.
[54] R. Doc. 31 at 7-10.
[55] *Id.* at 8.
[56] *Id.*

"bring[ing] a claim based on a fraudulent inducement not expressed within the terms of the [a]greements." *Fisk Elec. Co. v. DQSI, L.L.C.*, 2015 WL 6696751, at *4 (E.D. La. Nov. 3, 2015).[57]

The Court also rejects Roe's argument that Plaintiffs' fraudulent-inducement claim must fail under the rule "preclud[ing] fraudulent inducement claims based on alleged promissory or future statements" because his alleged misrepresentation here is "that he would retire in the near future, not a statement of present fact or circumstance."[58]   Roe mischaracterizes Plaintiffs' allegations about this claimed misrepresentation.  Plaintiffs allege that "Roe *misrepresented his intention* and certain material facts" by "represent[ing] that he was retiring when, in fact, he was *actively* competing against [Plaintiffs]."[59]  Thus, Plaintiffs do not merely allege, as Roe asserts, "that Roe did not follow through with the alleged promise to retire,"[60] but that he intentionally misrepresented his present intention to retire from the oil and gas industry to induce Plaintiffs to sign the Separation Agreement and Amendment.  Louisiana courts have clarified that "the legal standard for showing fraud is the intention not to perform at the time the promise is made because it constitutes a misrepresentation of a present rather than a future fact."  *Roberson v. Williams*, 2024 WL 534957, at *4 (W.D. La. Feb. 9, 2024) (citing *Automatic Coin Enters., Inc. v. Vend-Tronics, Inc.*, 433 So. 2d 766, 767 (La. App. 1983)); *see also Tex. Ins. Co. v. Talisman Specialty Underwriters, Inc.*, 2025 WL 592775, at *7 (E.D. La. Feb. 24, 2025) (denying motion to dismiss fraud claim based on allegation that defendant had no intention of honoring representations at the time they were made).  Plaintiffs have adequately alleged that they relied on Roe's

---

[57] The integration clause at issue in *Fisk Electric Company* stated, in relevant part:

This Settlement Agreement contains the entire agreement between the Parties .... *The Parties agree that no promise, inducement or agreement not expressed herein has been made to any of the Parties and further agree that this Settlement Agreement contains the entire agreement between the Parties.*

*Fisk Elec. Co.*, 2015 WL 6696751, at *4 n.4 (emphasis added).

[58] R. Doc. 31 at 9.

[59] R. Doc. 2-1 at 5-6 (emphasis added).

[60] R. Doc. 31 at 9.

misrepresentation that he was retiring when, in fact, he was actively competing against them – a present fact. Thus, at this pleadings stage, their fraudulent-inducement claim does not fail as a matter of law because, as pleaded, it is not "based on alleged promissory or future statements."[61]

### C. Breach-of-Contract Claim Against Roe

**Personal jurisdiction for Plaintiffs' breach-of-contract claim against Roe depends on the success of their fraudulent-inducement claim.**

Roe presumes that Plaintiffs' breach-of-contract claim against him "arise[s] from the … Separation Agreement and the Amendment,"[62] because "the Separation Agreement … was executed after the [E]mployment [A]greement's termination and discharged all obligations under the prior agreement."[63] He argues that the Court lacks jurisdiction over him for this claim because the Separation Agreement and the Amendment were not executed in Louisiana, neither required Roe to render performance in Louisiana, no "part of the actions giving rise to [the breach-of-contract] claim[] involved the state of Louisiana," and he was no longer working for Plaintiffs when he executed the Separation Agreement and Amendment.[64]

Plaintiffs, on the other hand, focus on Roe's contacts with Louisiana arising out of the Employment Agreement, because they argue that the Separation Agreement and Amendment are rescinded due to fraudulent inducement.[65] They contend that the Employment Agreement "was negotiated, drafted, and executed in Louisiana."[66] They also assert that Roe was aware that Plaintiffs' principal place of business was in Louisiana as he "often came to Apollo's offices within Louisiana"[67] and "Roe submitted reimbursement requests to Apollo for his travel to Louisiana to

---

[61] *Id.*
[62] R. Doc. 15-1 at 18-19.
[63] R. Doc. 31 at 3.
[64] R. Doc. 15-1 at 19.
[65] *See* R. Doc. 2-1 at 8.
[66] R. Doc. 21 at 9.
[67] *Id.* at 8.

sign the agreement, as well as living expenses while he lived in Slidell, Louisiana, and worked for Apollo from July 2017 to July 2023."[68]   Plaintiffs assert that Roe breached the Employment Agreement by using the intellectual property conveyed to Plaintiffs under that agreement without their permission.[69]   As to their alternative claim that Roe breached the Separation Agreement and Amendment, Plaintiffs argue that he "[s]imilarly … directed harm to Louisiana when he breached the … Separation Agreement and Amendment by continuing to use" that intellectual property.[70] Plaintiffs also contend that "Apollo negotiated and executed the [Separation A]greement and [A]mendment in Louisiana" after "Roe reached into Louisiana to initiate the contract negotiations."[71]

In arguing that Roe's alleged breach "directed harm to Louisiana," Plaintiffs improperly apply the minimum-contacts test for intentional torts such as fraud, which differs from the test applied to a contract claim.   *See Trois*, 882 F.3d at 492 ("As we have said, the considerations for personal jurisdiction over fraud claims are different from those we apply in a straight contract claim.").   When evaluating personal jurisdiction for breach-of-contract claims, courts consider "only those acts which relate to the formation of the contract and the subsequent breach," *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003), including the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479.   Courts may consider, for example, whether the agreement "was signed or negotiated in Louisiana, was breached through acts occurring in Louisiana, called for material performance in Louisiana, or was otherwise 'centered'

---

[68] *Id.*
[69] *Id.* at 10.
[70] *Id.* The Separation Agreement acknowledges that "Roe did sell and assign to [APS] all of Roe's rights, title and interest in" the property identified in § 6(a) of the Employment Agreement.  R. Doc. 15-7 at 1.
[71] R. Doc. 21 at 10.

in Louisiana." *Talisman Specialty Underwriters*, 2025 WL 958220, at *3.  Thus, the Court agrees with Roe that it lacks personal jurisdiction over the breach-of-contract claim against him arising from the Separation Agreement and Amendment because neither was executed in Louisiana, the only performance required in Louisiana was Plaintiffs' payments to Roe,[72] and the alleged breaches occurred outside of Louisiana.  That "Roe reached into Louisiana to initiate the negotiations" over the Separation Agreement and Amendment and "*Apollo* negotiated and executed" them from Louisiana[73] resulted from "nothing but 'the mere fortuity that [Plaintiffs] happen[] to be … resident[s] of the forum.'"  *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)).

The Court would, however, have personal jurisdiction over a breach-of-contract claim against Roe arising out of the Employment Agreement because it was executed by both parties in Louisiana[74] and created "a carefully structured … relationship that envisioned continuing and wide-reaching contacts" between Roe and Plaintiffs in Louisiana.  *Burger King Corp.*, 471 U.S. at 480.  The Employment Agreement stated that "[Roe]'s place of employment shall be *Apollo's principal place of business in Louisiana*, unless [Roe] and Apollo mutually agree otherwise";[75] it provided for Apollo's payment of "a housing stipend of up to $3,000.00 per month for [Roe]'s

---

[72] Neither the Separation Agreement nor the Amendment imposed any affirmative obligation on Roe.  *See* R. Docs. 15-7; 15-8.  A forum plaintiff's performance of contractual obligations in the forum state, alone, cannot establish personal jurisdiction over a nonresident defendant.  *See Trois*, 882 F.3d at 489 n.2.

[73] R. Doc. 21 at 10 (emphasis added).

[74] Roe states in his declaration that "[o]n January 29, 2016, *while located in Michigan*, [he] executed an employment agreement to work for [APS] and later Apollo."  R. Doc. 15-5 at 1 (emphasis added).  Plaintiffs assert that Roe signed the Employment Agreement on the same date in Covington, Louisiana, R. Doc. 21 at 8, 10 (citing R. Doc. 21-1 at 1), and attached with their opposition "Roe's reimbursement requests for travel and living expenses, including his 2016 travel expenses to sign the Employment Agreement" in Louisiana.  R. Doc. 21-1 at 3-4.  Because Roe does not controvert Plaintiffs' assertion that he signed the employment agreement in Louisiana, and "all [factual] conflicts must be resolved in favor of the plaintiff," *Thompson*, 755 F.2d at 1165, for purposes of this motion to dismiss, the Court accepts Plaintiffs' assertion that Roe signed the Employment Agreement in Louisiana.

[75] R. Doc. 15-4 at 1 (emphasis added).

reasonable housing expenses *in Louisiana*";[76] it included a noncompetition clause prohibiting Roe from "carry[ing] on or engag[ing] in a business similar to Apollo's business" in several Louisiana parishes for two years following his employment at Apollo;[77] it directed communications to APS's offices in New Orleans;[78] and it included a Louisiana choice-of-law provision.[79]

However, Plaintiffs only have a claim for breach of the Employment Agreement if the Separation Agreement and Amendment are rescinded due to fraudulent inducement, as these subsequent agreements between Roe and Plaintiffs each include a merger clause indicating the parties' intent that these agreements supersede their prior agreements, including the Employment Agreement.[80]  Because it is unclear at this juncture which agreement is the operative contract (due to the open question of whether the Separation Agreement and Amendment are rescinded) and, therefore, whether the Court has personal jurisdiction over the breach-of-contract claim against Roe, consideration of Roe's motion to dismiss this claim would be premature.  *See Fisk Elec. Co.*, 2015 WL 6696751, at *9 (declining to consider the defendant's argument that a merger clause in an agreement between the parties precluded the plaintiff's fraud claim where plaintiffs were granted leave to amend an undeveloped fraudulent-inducement claim which, if successful, would have negated that agreement).  Therefore, Roe's motion to dismiss the breach-of-contract claim

---

[76] *Id.* (emphasis added).  Roe does not deny that he lived in Louisiana for five years while working for Apollo, or that Apollo reimbursed his living expenses during those five years.

[77] *Id.* at 3.

[78] *Id.  Cf. Burger King Corp.*, 471 U.S. at 480 ("[The defendant] most certainly knew that he was affiliating himself with an enterprise based primarily in Florida.  The contract documents themselves emphasize that [the plaintiff]'s operations are conducted and supervised from the [plaintiff's] Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami.")

[79] R. Doc. 15-4 at 4.  *Cf. Burger King Corp.*, 471 U.S. at 482 ("Although [a Florida choice-of-law] provision standing alone would be insufficient to confer jurisdiction, we believe that, when combined with the 20-year interdependent relationship [the defendant] established with [the plaintiff]'s Miami headquarters, it reinforced his deliberate affiliation with the forum State [*i.e.*, Florida] and the reasonable foreseeability of possible litigation there.").

[80] R. Doc. 15-7 at 2 ("This Separation Agreement constitutes the entire agreement between the [p]arties and supersedes and replaces all other oral and written negotiations, agreements and understandings between them.").

against him is denied without prejudice to his re-urging these arguments once the viability of Plaintiffs' fraudulent-inducement claim has been determined.

### D. Breach-of-Contract Claim Against Pavlov

#### 1. Pavlov consented to this Court's jurisdiction by signing the First NDA.

In his motion to dismiss, Pavlov argues that Plaintiffs cannot establish personal jurisdiction over their breach-of-contract claim against him because he did not sign the First NDA in Louisiana, it did not require him to undertake any obligations in Louisiana, none of the alleged breaches took place in Louisiana, and "the Petition contains no allegations that Pavlov visited Louisiana or directed any contacts to Louisiana."[81]   He further argues that he did not consent to this Court's jurisdiction by signing the First NDA (which contains a Louisiana forum-selection clause) because he did not sign the First NDA in his individual capacity but instead as AlumaPower's agent, and because the Second NDA (which has a Delaware forum-selection clause), signed by AlumaPower, "contains an integration clause indicating that the Second NDA supersedes all prior agreements as to the same subject matter."[82]

In opposition to Pavlov's motion, Plaintiffs argue that "Pavlov reasonably expected to be haled to Louisiana – and, in fact, consented to the 'jurisdiction' of courts in Louisiana" by signing the First NDA.[83]   Plaintiffs assert that Pavlov's argument that the First NDA "was somehow superseded by [the Second NDA] that Plaintiffs also required AlumaPower to sign … is nonsensical" because Plaintiffs wanted separate nondisclosure agreements from each of Pavlov and AlumaPower and "Pavlov is not a party to the [Second NDA] between Plaintiffs and

---

[81] R. Doc. 17-1 at 19.
[82] *Id.* at 20.
[83] R. Doc. 22 at 7.

AlumaPower and that separate agreement has no bearing on his personal contractual obligations to Plaintiffs."[84]

"Under Fifth Circuit precedent, parties to a contract may consent to personal jurisdiction and venue via a forum selection clause." *Citadel Recovery Servs., LLC v. T.J. Sutton Enters., LLC*, 2019 WL 5725055, at *6 (E.D. La. Nov. 5, 2019) (citing *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995)). "'A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable.'" *Id.* (quoting *Kevlin Servs., Inc.*, 46 F.3d at 15). The Court agrees with Plaintiffs that Pavlov consented to personal jurisdiction in Louisiana by signing the First NDA, which contains a forum-selection clause stating that the parties "irrevocably and unconditionally submit to the exclusive jurisdiction of the state and federal district courts which govern the Parish of St. Tammany, State of Louisiana, and waive any objection to forum or venue … in any action arising out of this [a]greement."[85]  Pavlov does not contend that the forum-selection clause is unreasonable, but instead argues that the First NDA is void in its entirety.

Though Pavlov repeatedly asserts that he "was indisputably acting at the direction of and as an agent of Aluma[P]ower" when he signed the First NDA,[86] Pavlov's purported agency status is not apparent, much less indisputable, from the language of the First NDA. Nothing in the First NDA indicates that Pavlov signed it as a representative of AlumaPower or that AlumaPower was a party to it.[87]  AlumaPower is not named anywhere in the First NDA. The parties to the First

---

[84] *Id.* at 13 (responding to the same argument, *i.e.,* that the First NDA is superseded by the Second NDA, advanced by Pavlov to attack the sufficiency of Plaintiffs' breach-of-contract claim).

[85] R. Doc. 17-10 at 7.

[86] R. Doc. 33 at 4 (emphasis omitted).

[87] While the First NDA includes "representatives" of the signatory parties within the term "Party," whatever relationship Pavlov had to AlumaPower – which has not been made clear to the Court, *see infra* note 91 – would not render AlumaPower his "representative" as defined in the First NDA. R. Doc. 17-10 at 1 ("The Parties shall be responsible for any breaches of this Agreement by any of their *affiliates*, directors, officers, employees, *agents*, subsidiaries, partners, shareholders/members, attorneys, accountants, consultants and advisors ('Representatives') and

NDA are identified as "Apollo and Kevin J[.] Pavlov" in the preamble[88] and again on the signature page.[89]  The only indication that Pavlov signed the First NDA in a representative capacity is the inclusion of the designation "CEO" after his signature,[90] but nothing in the agreement identifies what entity he supposedly served in that capacity, and there is no evidence in the record now before the Court that Pavlov was ever CEO of AlumaPower.[91]  Moreover, the mailing address provided by Pavlov to be used for notices in the First NDA is the same Michigan address as Bohr Energy's principal and mailing address and, therefore, likely Pavlov's personal address.[92]

Pavlov argues that it is obvious that he signed the First NDA on behalf of AlumaPower because "Plaintiff[s] believed that [they were] dealing with Pavlov acting on behalf of AlumaPower,"[93] and "both NDAs identify a specific purpose, i.e., to consider a possible business relationship with the other party."[94]  However, "the Court will not look outside the contract when the terms are unambiguous."  *Bernard v. Grefer*, 2015 WL 1781674, at *8 (E.D. La. Apr. 20, 2015).  Pavlov has identified no ambiguous language regarding the parties to the First NDA, and the Second NDA (which contains the merger clause and Delaware forum-selection clause on which

---

all Representatives shall be included within the term Parties for the purposes of this Agreement." (emphasis added)). AlumaPower (a corporation) would not be Pavlov's "affiliate," *see Affiliate*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."), or "agent," *see Agent*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Someone who is authorized to act for or in place of another; a representative.").  And it is obvious that none of the other descriptors of "representatives" ("directors, officers, employees, … subsidiaries, partners, shareholders/members, attorneys, accountants, consultants and advisors") would apply to AlumaPower.

[88] R. Doc. 17-10 at 1 ("This Mutual Confidentiality and Non-Disclosure Agreement … is made and entered into … by and between Apollo Holding Company, LLC ('Apollo') and Kevin Pavlov ('Kevin').  Apollo and Kevin J[.] Pavlov may be referred to individually 'party/Party' or together as 'parties/Parties'.").

[89] *Id.* at 9.

[90] *Id.*

[91] The Second NDA was signed by a Rob Alexander, who is clearly identified as AlumaPower's CEO.  *See* R. Doc. 17-11 at 7.  Pavlov does not explain his role at AlumaPower, only referring to himself as its "agent." *See* R. Docs. 17-1 at 10; 33 at 2, 4, 7-8.  In his motion to dismiss, Roe states that Pavlov was "working as an independent consultant for AlumaPower Corporation" when he "learned of Roe's [Advanced Separation Gas Infusion System] and approached Apollo about whether this system could be used to generate energy."  R. Doc. 15-1 at 9.

[92] *Compare* R. Doc. 17-10 at 10, *with* R. Doc. 17-3 at 1.  Bohr Energy was not formed until May 13, 2024, after the First NDA was executed.  *See* R. Doc. 17-3 at 1.

[93] R. Doc. 17-1 at 10 (first citing R. Doc. 2-1 at 3-4, then citing R. Doc. 17-9).

[94] R. Doc. 33 at 8.

Pavlov relies) makes it equally clear that the only parties to it are AlumaPower and Apollo.[95]  And the fact that both of the nondisclosure agreements have a stated purpose of facilitating the exchange of information to explore a potential business relationship between their respective parties does not transform the identities of those parties, which are clearly stated in each agreement.[96]

In sum, because AlumaPower was not a party to the First NDA and Pavlov is not a party to the Second NDA, the Second NDA's merger clause stating that it "supersedes all prior and contemporaneous negotiations, understandings, representations and warranties and agreements *between the Parties*"[97] (Apollo and AlumaPower) has no bearing on the First NDA (between Apollo and Pavlov).  Thus, the First NDA is controlling here as to Pavlov, and because Pavlov agreed to "irrevocably and unconditionally submit to the exclusive jurisdiction of the state and federal district courts which govern the Parish of St. Tammany," he consented to personal jurisdiction in this district, and his motion to dismiss the breach-of-contract claim against him for lack of personal jurisdiction is therefore denied.

---

[95] R. Doc. 17-11 at 1 ("This Confidentiality Agreement … is entered into by and between AlumaPower Corporation … and Apollo Holding Company LLC … (together the 'Parties', and each a 'Party')."). While Pavlov may be a representative of AlumaPower in some capacity, the Second NDA, unlike the First NDA, does not include the signatory parties' representatives within the term "Party." *Compare* R. Doc. 17-10 at 1 ("all Representatives shall be included within the term Parties for the purposes of this Agreement"), *with* R. Doc. 17-11 at 2 ("'Representatives' means, as to any Person [defined elsewhere as 'any individual, partnership (whether general, limited or limited liability), corporation, association, trust or other entity'], such Person's affiliates, and its and their respective directors, officers, employees, general partners, agents and consultants (including lawyers, financial advisors and accountants)."). Thus, Pavlov cannot argue that he was a party to the Second NDA.

[96] Pavlov argues that, if Plaintiffs' "secret intention" was to explore a business relationship with Pavlov individually as well as with AlumaPower, "Plaintiffs would have been secretly concocting a scheme for Pavlov to go to Mississippi and meet Roe as Aluma[P]ower's agent and also in direct competition with Aluma[P]ower.  Under such a scenario, La. [Civ. Code] art[.] 2030 would render the First NDA as void ab initio as Plaintiffs would be intentionally fostering violations of Pavlov's fiduciary duties, LUPTA, and other related laws." R. Doc. 33 at 8-9 (discussing La. Civ. Code art. 2030 ("A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral.")).  Even assuming such a scheme could be inferred from the purpose clause of the First NDA, Pavlov cites no authority for his suggestion that, by merely executing nondisclosure agreements as a preliminary step in exploring a potential business relationship with each of Pavlov and AlumaPower, "Plaintiffs would be intentionally fostering violations of Pavlov's fiduciary duties, LUPTA, and other related laws," such that the First NDA would be nullified by article 2030.  And given that the Court has no information about Pavlov's relationship to AlumaPower, *see supra* note 91, it is impossible to determine whether he owed AlumaPower any fiduciary duties, or whether LUTPA or "other related laws" would be implicated in this scenario.

[97] R. Doc. 17-11 at 6 (emphasis added).

### 2. Pavlov consented to this forum and waived his right to object to venue here.

Pavlov objects to venue in this district for all of Plaintiffs' claims on the same grounds as Roe – namely, because "all of the Defendants are Michigan residents" and the "wrongdoing alleged to have occurred all happened outside of Louisiana."[98]  Plaintiffs argue that venue is proper in this district for their breach-of-contract claim against Pavlov because he consented to venue by signing the First NDA and because "the facts surrounding the execution and performance" of the First NDA occurred in Louisiana.[99]  In his reply, Pavlov again argues that "the First NDA was superseded and replaced by the Second NDA," which "requires litigation in Delaware."[100]

To determine whether venue is proper under § 1391(b)(2) for a breach-of-contract claim, "courts tend to focus on where the contract was negotiated or executed, where the contract was to be performed, and where the contract was allegedly breached."  14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 3806, at 171-173 (4th ed. 2025); *see also Ross v. Digioia*, 2012 WL 72703, at *4 (E.D. La. Jan. 10, 2012).  None of those events with respect to the First NDA occurred in Louisiana.  Plaintiffs assert that "[t]he confection[,] … drafting and signing of the [First NDA] occurred in Louisiana, and performance was owed within Louisiana."[101]  But Plaintiffs do not indicate whether Pavlov was involved in the drafting of the First NDA and do not specify which parties signed the First NDA in Louisiana. Pavlov, however, has provided a declaration stating that he was "located in the state of Michigan"

---

[98] R. Doc. 17-1 at 21.

[99] R. Doc. 22 at 10-11 (quote at 11).

[100] R. Doc. 33 at 6.

[101] R. Doc. 22 at 11.  Plaintiffs rely on *Ross v. Digioia*, which they say held that venue was proper in Louisiana, even though the performance and alleged breach of the contract at issue occurred in Florida, because "the contract was 'confected' in Louisiana" and "because there were contract negotiations, financing, and harm felt by the plaintiffs in the district."  *Id.* at 10 (discussing 2012 WL 72703, at *4).  However, the court, noting that venue as to Digioia was a "close[] question," explained that "plaintiffs assert that the agreement was 'confected' when Digioia was in Louisiana [and] that the parties negotiated the specifics of the agreement during Digioia's visits to New Orleans."  *Digioia*, 2012 WL 72703, at *4.  Here, Plaintiffs have made no assertion that Pavlov ever visited Louisiana in connection with the negotiation or signing of the First NDA.

when he executed the First NDA.[102]   No breach is alleged to have occurred in Louisiana, and, while Pavlov may have "owed" performance to Plaintiffs in Louisiana, he was not obligated to render any performance in Louisiana.  Thus, because venue is not proper under § 1391(b)(2), the Court must consider whether the forum-selection clause of the First NDA, which states that the parties "irrevocably and unconditionally submit to the exclusive jurisdiction of the state and federal district courts which govern the Parish of St. Tammany, State of Louisiana, *and waive any objection to forum or venue* … in any action arising out of this [a]greement,"[103] can defeat Pavlov's Rule 12(b)(3) motion.

In *Atlantic Marine*, the Supreme Court explained that "the court must determine whether the case falls within one of the three categories set out in § 1391(b)" when considering a Rule 12(b)(3) challenge to venue and "a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)."[104] 571 U.S. at 56.  However, *Atlantic Marine* "concern[ed] the procedure that is available for a *defendant* in a civil case who seeks to enforce a forum-selection clause."  *Id.* at 52 (emphasis added).  Here, Pavlov does not seek to enforce the forum-selection clause through dismissal under Rule 12(b)(3).  Instead, Plaintiffs, who brought this claim in the forum contemplated by the forum-selection clause at issue, invoke the forum-selection clause in opposition to Pavlov's motion to dismiss under Rule 12(b)(3).  Neither the Supreme Court nor the Fifth Circuit has considered such a scenario in light of *Atlantic Marine*.  But several district courts in this circuit have, and held that the forum-selection clause relied upon

---

[102] R. Doc. 17-9 at 1.

[103] R. Doc. 17-10 at 7 (emphasis added).

[104] The *Atlantic Marine* Court explained that "a case filed in a district that falls within § 1391 may not be dismissed under … Rule 12(b)(3)" due to a forum-selection clause specifying another forum because the Rule "authorize[s] dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought."  571 U.S. at 56.  Instead, the Court held that 28 U.S.C. § 1404(a) is the proper mechanism to enforce a forum-selection clause, as it "does not condition transfer on the initial forum's being 'wrong.'"  *Id.* at 59.  The Court then went on to observe that, in the context of § 1404(a) motions, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."  *Id.* at 63 (quotation and alteration omitted).

by the plaintiffs in those cases defeated the defendants' Rule 12(b)(3) motions to dismiss.  *See Huawei Techs. Co. v. Yiren Huang*, 2018 WL 1964180, at *8 (E.D. Tex. Apr. 25, 2018) (distinguishing *Atlantic Marine*); *Matheson Tri-Gas, Inc. v. FlexTM, Inc.*, 2018 WL 2363958, at *5 (S.D. Tex. May 24, 2018) (denying Rule 12(b)(3) motion upon concluding that the defendant "waived its right to challenge the propriety of venue in the Southern District of Texas" by signing a forum-selection clause specifying that forum); *J.D. Fields & Co. v. Shoring Eng'rs*, 391 F. Supp. 3d 698, 706 (S.D. Tex. 2019) (holding that "the court need not conduct traditional jurisdiction or venue analyses when the parties have consented to litigation in a given forum" and denying Rule 12(b)(3) motion); *Citadel Recovery Servs., LLC*, 2019 WL 5725055, at *7 (denying Rule 12(b)(3) motion where the plaintiff brought suit in the parties' chosen forum because "[a] permissive forum selection clause 'is only a contractual waiver of personal jurisdiction and venue objections if litigation is commenced in the specified forum'" (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016)));  *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 572 (S.D. Tex. 2020) (denying Rule 12(b)(3) motion "[b]ecause the court conclude[d] that [d]efendants are all bound by the NDA's forum-selection clause for Houston, Texas") (citing *Atlantic Marine*, 571 U.S. at 59); *B & T Rentals Inc. v. True Performance Directional Drilling LLC*, 2021 WL 3660980, at *4 (W.D. La. Mar. 4, 2021) (agreeing with *Huawei* and denying Rule 12(b)(3) motion "[i]n light of … cases [enforcing forum-selection clauses after *Atlantic Marine*] and in the absence of Fifth Circuit precedent invalidating forum selection clauses that provide for venues outside of § 1391's categories").[105]

---

[105] More recent cases out of circuit are to like effect.  *See, e.g., LMMC, LLC v. Solberg*, 2025 WL 1364199, at *4 (D. Neb. May 12, 2025); *Barresi v. Lynx Restoration Grp., Inc.*, 2025 WL 1356808, at *4 (E.D. Va. Apr. 9, 2025), *adopted*, 2025 WL 1384273 (E.D. Va. May 13, 2025); *United Natural Foods, Inc. v. Maciel*, 2025 WL 1047519, at *5-6 (D. Minn. Apr. 7, 2025).

The *Huawei* court persuasively reasoned that "*Atlantic Marine* is inapposite" in cases where the "[p]laintiffs filed suit in the venue mandated by the forum-selection clause." 2018 WL 1964180, at *7. The court observed that the factual scenario presented in *Atlantic Marine* raised the "concern[] that enforcing a forum-selection clause could flout congressional intent ... 'that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant,'" *id.* at *6 (quoting *Atlantic Marine*, 571 U.S. at 56) (emphasis in original), whereas cases like *Huawei* and the instant case, where the forum-selection clause is not invoked in support of dismissal, "do[] not present the same risk of running afoul [of] Congress' intent to have venue lie in at least one federal court." *Id.* at *7. The *Huawei* court further reasoned that "[t]his set of facts actually promotes the strong federal policy in favor of enforcing forum-selection clauses" and avoiding venue gaps, *id.* (citing *Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 513 (5th Cir. 2007); *Atlantic Marine*, 571 U.S. at 66), observing that, "even if a forum-selection clause does not make venue 'proper' [under § 1391(b)], dismissal based on improper venue would be inappropriate because 'the venue statute merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.'" *Id.* at *8 (internal quotation and alteration omitted). Finally, the court noted that denying the defendant's Rule 12(b)(3) motion "ma[de] practical sense in terms of judicial efficiency" because after a case is dismissed from the forum specified by the parties' forum-selection clause under Rule 12(b)(3) and re-filed in a statutorily "proper" venue, the plaintiff could in turn move to transfer the case under § 1404(a), "likely" resulting in transfer back to the original forum under *Atlantic Marine*'s prescribed analysis for transfers based on forum-selection clauses. *Id.* at *9.

For the same reasons articulated by the *Huawei* court, and because the consensus among courts in this circuit is that dismissal under Rule 12(b)(3) is inappropriate where a case has been brought in the forum specified by the parties' forum-selection clause, the Court declines to dismiss this claim under Rule 12(b)(3) given the First NDA's forum-selection clause.

### 3. Plaintiffs have sufficiently alleged a breach-of-contract claim against Pavlov.

Pavlov argues that Plaintiffs' breach-of-contract claim based on the First NDA must be dismissed under Rule 12(b)(6) for the same reasons he contends the Court lacks personal jurisdiction over that claim – because, he says, he was not a party to the First NDA and, in any event, the First NDA was voided by the merger clause in the Second NDA.[106]  In their opposition, Plaintiffs contend that they have adequately stated a claim for breach of contract and that "Pavlov is not a party to the agreement between Plaintiffs and AlumaPower [*i.e.*, the Second NDA] and that separate agreement has no bearing on his personal contractual obligations to Plaintiffs."[107]

To succeed on a breach-of-contract claim, a plaintiff must show "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."  *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 2011).  Here, Plaintiffs argue that Pavlov undertook an obligation not to use confidential information disclosed to him under the First NDA except as permitted to explore a possible business relationship with Apollo, that Pavlov breached that obligation by using information protected by the First NDA "to compete against Apollo," and that Plaintiffs suffered damages as a result of that breach.[108]  Pavlov does not argue that Plaintiffs have failed to plead the elements of a breach-of-contract claim, and instead contends that this claim against him must fail

---

[106] R. Docs. 17-1 at 21; 33 at 7-9.
[107] R. Doc. 22 at 13.
[108] R. Doc. 2-1 at 7.

because the First NDA is superseded by the Second NDA. The Court has already rejected this argument in determining that it has personal jurisdiction over this claim.[109] Thus, because Plaintiffs have alleged the elements of a claim for breach of contract, Pavlov's motion to dismiss this claim under Rule 12(b)(6) is denied.

### E. LUTPA Claims

**Plaintiffs have not alleged sufficient facts for the Court to determine whether it has personal jurisdiction over their LUTPA claims against any of the Defendants.**

Defendants contend that this Court lacks personal jurisdiction over Plaintiffs' LUTPA claims against each of them because "none of the alleged conduct giving rise to the[se] claim[s] is averred to have occurred in Louisiana, much less having been intended to occur in Louisiana as required for tort claims."[110] Bohr Energy further argues that "Plaintiffs offer no facts and make no allegations that Bohr Energy itself purposefully availed itself of the forum," and "fail to cite any legal basis for imputing [Roe and Pavlov's] contacts to Bohr Energy for jurisdictional purposes,"[111] and, even if Roe and Pavlov's contacts could be imputed to Bohr Energy, "Plaintiffs fail[] to offer any evidence in the record of [the] type of purposeful and direct contact" required to establish minimum contacts,[112] aside from vague and conclusory allegations.[113] Defendants also argue that Plaintiffs have failed to plead their LUTPA claims with particularity, as required by Rule 9(b), and "fail to identify any 'proprietary information' being fraudulently misused, how it is being misused, and how they have been hurt by it."[114]

---

[109] *See supra* § II(D)(1).
[110] R. Docs. 15-1 at 20; 17-1 at 19-20; 20 at 18-19.
[111] R. Doc. 32 at 3.
[112] *Id.* at 4.
[113] *Id.* at 5.
[114] R. Docs. 15-1 at 22; 17-1 at 22; 20 at 20.

Plaintiffs respond that they have established sufficient minimum contacts between each of Defendants and the forum relating to their LUTPA claims.  They argue that "Roe directed harm to Louisiana when he engaged in unfair business practice by using protected proprietary information to establish a direct competitor with Plaintiffs and sought to entice clients and investors from Plaintiffs."[115]  With respect to Pavlov, Plaintiffs argue that he directed harm to Louisiana by deceptively "making it appear that he was exploring a business relationship with [Plaintiffs] when, in reality, he was planning to launch a competitive venture ... and misappropriat[ing] these Louisiana companies' intellectual property with full knowledge that the Louisiana companies would be harmed within Louisiana."[116]  And Plaintiffs contend that Bohr Energy, through Roe and Pavlov, "directed harm to Louisiana when it engaged in unfair trade practices by misappropriating Plaintiffs' intellectual property to compete with Plaintiffs and sought to entice clients and investors from Plaintiffs."[117]  Plaintiffs also argue that they have stated a claim for relief under LUTPA because Defendants' alleged "misuse of Plaintiffs' intellectual property to unfairly compete against Plaintiffs is a hornbook example of a scheme that violates LUTPA."[118]

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. R.S. 51:1405.  "A LUTPA claim must show (1) 'the plaintiff suffered an ascertainable loss; and (2) the loss must have resulted from another's use of unfair methods of competition and unfair or deceptive acts or practices.'"  *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, 2022 WL 1488130, at *5 (E.D. La. May 11, 2022) (quoting *Express Lien, Inc. v. Nationwide Notice, Inc.*, 2016 WL 7097382, at *7 (E.D. La. Dec. 5, 2016)).  To recover under LUTPA, "the plaintiff must prove some element of fraud, misrepresentation,

---

[115] R. Doc. 21 at 10.
[116] R. Doc. 22 at 8.
[117] R. Doc. 23 at 7.
[118] R. Doc. 22 at 13; *see also* R. Docs. 21 at 17; 23 at 10.

deception or other unethical conduct." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (quotation omitted). "'Collective pleading, where allegations are levied against multiple defendants without differentiation, does not pass muster.'" *Dong Phuong Bakery, Inc.*, 2022 WL 1488130, at *5 (quoting *Jackson v. Gautreaux*, 2022 WL 717079, at *3 (M.D. La. Mar. 9, 2022)).

Courts apply the same minimum-contacts analysis to LUTPA claims as to intentional-tort claims. *See, e.g., House of Raeford Farms of La. L.L.C. v. Poole*, 2021 WL 3673901, at *4 (W.D. La. Mar. 18, 2021) ("Here, the torts alleged against the [d]efendants are fraud, LUTPA, conspiracy to commit these and other torts, negligence, and unjust enrichment. Perpetrating fraud on a plaintiff in a forum state, whether through misrepresentation or omission, satisfies minimum contacts, even if the defendant was not physically within the forum state when the fraud was committed."). Here, Plaintiffs have not alleged their LUTPA claims with sufficient detail for the Court to begin to evaluate the Defendants' minimum contacts under that test. Plaintiffs generally allege that Roe and Pavlov "actively engaged in fraudulent conduct to … receive benefits from" and misuse the "proprietary information" of Plaintiffs.[119] As to Bohr Energy, they vaguely allege that it is a "direct beneficiary of" and "active participant" in Roe and Pavlov's unspecified "fraudulent conduct."[120] Without any description of the alleged "fraudulent conduct" giving rise to these claims, the Court cannot evaluate whether that conduct was directed at Plaintiffs in Louisiana. Thus, the Court grants Defendants' motion to dismiss Plaintiffs' LUTPA claims under Rule 12(b)(2), but without prejudice to Plaintiffs' amending their petition to plead additional facts showing each Defendants' contacts with the forum related to those claims. Though the Court does not reach the Defendants' challenges to the LUTPA claims under Rule 12(b)(6), it notes that, because Plaintiffs have not sufficiently alleged their LUTPA claims with sufficient particularity to

---

[119] R. Doc. 2-1 at 7.
[120] *Id.*

apply the minimum-contacts analysis for intentional torts, their LUTPA allegations necessarily also fail to meet Rule 9(b)'s pleading requirements, which apply to LUTPA claims that "raise the issue of fraud." *Rahman v. Allstate Ins. Co.*, 644 F. Supp. 3d 231, 241 (E.D. La. 2022).

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Roe's motion to dismiss (R. Doc. 15) is GRANTED in part and DENIED in part.  As to Plaintiffs' fraudulent-inducement claim against Roe, his motion is GRANTED for failure to state a claim pursuant to Rule 12(b)(6), and that claim is DISMISSED WITHOUT PREJUDICE to filing an amended complaint pleading the claim with sufficient particularity.  As to Plaintiffs' breach-of-contract claim against Roe, his motion is DENIED without prejudice to refiling once the viability of Plaintiffs' fraudulent-inducement claim has been determined.  As to Plaintiffs' LUTPA claim against Roe, his motion is GRANTED for lack of personal jurisdiction pursuant to Rule 12(b)(2), and that claim is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Pavlov's motion to dismiss (R. Doc. 17) is GRANTED in part and DENIED in part.  As to Plaintiffs' breach-of-contract claim against Pavlov, his motion is DENIED.  As to Plaintiffs' LUTPA claim against Pavlov, his motion is GRANTED for lack of personal jurisdiction pursuant to Rule 12(b)(2), and that claim is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Bohr Energy's motion to dismiss Plaintiffs' LUTPA claim against it (R. Doc. 16) is GRANTED for lack of personal jurisdiction pursuant to Rule 12(b)(2), and that claim is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to file an amended complaint alleging additional facts to meet Rule 9(b)'s heightened pleading requirements for fraud so as to state a claim for fraudulent inducement, and, as to their LUTPA claim, to establish personal jurisdiction. Any amended complaint shall be filed within fourteen (14) days from the date this Order is issued, and failure to timely file an amended complaint curing the noted deficiencies will lead to dismissal with prejudice.

New Orleans, Louisiana, this 22nd day of May, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE