UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

APOLLO HOLDING COMPANY, LLC, *et al.*          CIVIL ACTION

VERSUS                                          NO. 24-2773

CLIFF ROE, *et al.*                             SECTION M (3)

## ORDER & REASONS

Before the Court are motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) filed by each of defendants Bohr Energy, LLC ("Bohr Energy"),[1] Kevin Pavlov,[2] and Cliff Roe[3] (collectively, "Defendants"). Plaintiffs Apollo Holding Company, LLC ("Apollo") and GAPS Technology, LLC ("GAPS") (together, "Plaintiffs") respond in opposition to each motion,[4] and Defendants reply in further support of their motions.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

This case involves claims of fraudulent inducement, breach of contract, and unfair trade practices. Apollo is a Delaware limited liability company ("LLC") authorized to conduct business in Louisiana and its members are Louisiana citizens.[6] GAPS is a Louisiana LLC wholly owned by Apollo.[7] Roe and Pavlov are Michigan residents and the members of Bohr Energy, a Florida LLC with its principal place of business in Michigan.[8]

---

[1] R. Doc. 36.
[2] R. Doc. 37.
[3] R. Doc. 38.
[4] R. Docs. 39 (opposing Bohr Energy's motion); 40 (opposing Pavlov's motion); 41 (opposing Roe's motion).
[5] R. Docs. 46 (Bohr Energy's reply); 47 (Pavlov's reply); 48 (Roe's reply).
[6] R. Doc. 35 at 1.
[7] *Id.* at 1, 3.
[8] R. Docs. 35 at 1; 16-1 at 7; 16-3 at 1.

Roe was hired by Apollo's predecessor-in-interest, Apollo Petroleum Solutions, LLC ("APS") in 2016.[9]   On January 29, 2016, Roe executed an employment agreement (the "Employment Agreement") with APS in Covington, Louisiana.[10]   As part of the Employment Agreement, Roe agreed to

> sell[] all of [his] equipment, demo units, devices, applications, intellectual property, patents pending and other property whether related to the Advanced Separation Gas Infusion System, which [Roe] developed, or otherwise. This conveyance specifically includes all of [Roe's] property and systems [then] currently in development and developed in the future, whether the Gas Infusion System or any other related or unrelated technology.  This conveyance also includes any use [then] currently known or unknown for the intellectual property conveyed.[11]

In 2017, Roe relocated from Michigan to Slidell, Louisiana, to work in APS's laboratory in Picayune, Mississippi.[12]   Thereafter, APS underwent a corporate restructuring to form Apollo, which assumed all of APS's obligations to Roe under the Employment Agreement,[13] including paying for Roe's living expenses in Louisiana.[14]   As part of its restructuring, APS conveyed to GAPS all rights, titles, and interests it acquired from Roe under the Employment Agreement, and GAPS licensed all of its intellectual property to Apollo.[15]  Plaintiffs also allege that "Roe executed further assignments over the years that assigned provisional patents and applications to GAPS, which was, in turn, subject to the licensing arrangement between GAPS and Apollo."[16]

In 2023, AlumaPower Corporation ("AlumaPower") became interested in Apollo's technology.  AlumaPower sent Pavlov to meet with Roe at Apollo's Mississippi laboratory on April 18, 2023, to discuss a possible business relationship with Apollo.[17]  On January 18, 2023,

---

[9] R Doc. 35 at 2.
[10] *Id.*
[11] R. Doc. 15-4 at 2.
[12] R. Docs. 21 at 3; 21-1 at 1.
[13] R. Doc. 35 at 3.
[14] R. Docs. 15-4 at 1; 21-1 at 2.
[15] R. Doc. 35 at 3.
[16] *Id.*
[17] *Id.*; R. Doc. 15-1 at 12.

before meeting with Roe, Pavlov signed a nondisclosure agreement (the "First NDA") with Apollo.[18]  On April 17, 2023, the day before Roe and Pavlov's meeting, AlumaPower, through its CEO, signed another NDA with Apollo (the "Second NDA").[19]  No business arrangement between Apollo and AlumaPower resulted from Roe and Pavlov's April 18, 2023, meeting.[20]

In June 2023, Roe allegedly began telling Apollo's employees, managers, and owners that he intended to retire due to his poor and rapidly declining health, resulting from a heart condition, so he could spend more time with his family, particularly his mother and grandchild.[21]  Specifically, on June 19, 2023, Roe made such statements to Dimitri Menutis, a member of APS and a board member of Apollo, and also to Ruby Manriquez, an Apollo chemist.[22]  Impelled by his concern, Menutis then told Chris Jean, the manager of Apollo, about his conversation with Roe.[23]  During the week of June 19- June 23, 2023, Roe made similar statements to Gil Stroud, an employee of Apollo in charge of shipping, receiving, and blending chemicals, and also to Jerry Pourciau, a member of APS, a board member of Apollo and the head of field production for Apollo.[24]  On June 21, 2023, Roe sent a formal resignation letter addressed to APS which referenced his oral resignation made on June 19, 2023, and stated that his last day of work would

---

[18] R. Docs. 35 at 4; 17-10.  The First NDA included a forum-selection clause stating that:

The [p]arties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the state and federal district courts which govern the Parish of St. Tammany, State of Louisiana, and waive any objection to forum or venue and agree to accept service of process by mail in any action arising out of this Agreement.

R. Doc. 17-10 at 7.

[19] R. Doc. 17-11.  The Second NDA has a Delaware forum-selection clause.  *Id.* at 5.
[20] R. Doc. 15-1 at 12.
[21] R. Doc. 35 at 4.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 4-5.

be July 6, 2023.[25]  Then, on June 24, 2023, in a reply to a text from Menutis asking about his health, Roe stated that he was dying due to his heart issues.[26]

Roe and Apollo began negotiating "a separation package that would take into account the parties' continuing obligations under the Employment Agreement."[27]  Plaintiffs allege that, during these negotiations, Roe continued to make statements that he could not work due to his health.[28]  On September 5, 2023, he told Menutis in a text message "that he was trying to adapt to getting through 8-hour days with no accomplishments.[29]  However, that same day, allege Plaintiffs, Roe sent an email to numerous individuals he met though his work at Apollo regarding chemical development work he was performing in a Bohr Energy lab.[30]  Plaintiffs further allege that "[t]he email attached a description of a 'Bohr Energy Proprietary Chemical Blend' which is very closely related to – and is, in fact, a continuation of – certain chemical blends on which Mr. Roe worked prior to his resignation from Apollo and which are the intellectual property of Apollo."[31]  Then on October 6, 2023, Roe emailed an Apollo customer the schematics for a proposed lab and equipment that Bohr Energy was considering building.[32]  On October 16, 2023, Roe sent an email, jointly signed by himself and Pavlov, to an Apollo customer providing comments on schematics for equipment part designs.[33]

Roe and Plaintiffs executed a voluntary separation agreement (the "Separation Agreement") on March 29, 2024.[34]  Plaintiffs allege that their assent to the terms of the Separation

---

[25] *Id.* at 5.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 5-6.
[31] *Id.*
[32] *Id.* at 6.
[33] *Id.*
[34] *Id.*

Agreement was induced by Roe's representations about his "waning health" and that he would be retiring from the oil and gas industry due to his poor health.[35]  However, on May 13, 2024, Roe and Pavlov formed Bohr Energy.[36]  In September of 2024, Roe and Plaintiffs amended the Separation Agreement to modify Plaintiffs' payment obligations to Roe (the "Amendment").[37] Plaintiffs allege that "Roe continued to maintain that he had fully retired from work due to his extremely poor and declining health and thus was staying out of the oil and gas industry" and they relied on that representation when agreeing to the Amendment.[38]  Nonetheless, say Plaintiffs, the whole time "Roe had been planning to compete, was competing, and is currently competing against Apollo and GAPS while using the intellectual property which he conveyed and in which Apollo and GAPS now have exclusive ownership interests."[39]  To that end, Roe allegedly partnered with Pavlov to form Bohr Energy to compete within the oil and gas treatment industry by using Plaintiffs' intellectual property.[40]  Plaintiffs allege that Roe and Pavlov are seeking funding for Bohr Energy and "meeting and corresponding with Apollo clients and potential investors in order to pitch products and technologies which infringe on [Plaintiffs'] intellectual property."[41] Plaintiffs claim that Roe and Pavlov engaged in such discussions with two residents of Louisiana that are Apollo clients or investors.[42]

On November 1, 2024, Plaintiffs brought this action in the 22nd Judicial District Court of St. Tammany Parish, Louisiana, asserting a fraudulent-inducement claim against Roe, breach-of-contract claims against Roe and Pavlov, and claims under the Louisiana Unfair Trade Practices

---

[35] *Id.*
[36] R. Doc. 15-1 at 13.
[37] R. Doc. 35 at 6; 15-8.
[38] R. Doc. 35 at 6-7.
[39] *Id.* at 7.
[40] *Id.*
[41] *Id.*
[42] *Id.*

Act ("LUTPA"), La. R.S. 51:1401-1430, against all three Defendants.[43]  Plaintiffs alleged that Roe falsely represented "that he was retiring when, in fact, he was actively competing against [Plaintiffs and] intended for this misrepresentation to induce [them] to agree to" the Separation Agreement and the Amendment;[44] that Roe breached the Employment Agreement, as well as the Separation Agreement and Amendment (assuming they are not rescinded due to fraudulent inducement), by using the intellectual property that he transferred to Plaintiffs without their authorization;[45] that Pavlov breached the First NDA by "using the disclosed, proprietary information and intellectual property to compete against Apollo" through Bohr Energy;[46] and that Roe and Pavlov "actively engaged in fraudulent conduct to … receive benefits from [Plaintiffs and] misuse proprietary information that [Plaintiffs] ha[ve] exclusive ownership interests in," with Bohr Energy benefitting from, and participating in, this "misuse" of Plaintiffs' proprietary information, all in violation of LUTPA.[47]  Defendants removed this case to this Court on November 27, 2024.[48]

Following removal, Defendants filed motions to dismiss the original complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.[49]  The Court held that it has personal jurisdiction over Plaintiffs' fraudulent-inducement claim against Roe because Plaintiffs allege that Roe directed a misrepresentation to them in Louisiana and that venue is also proper for that claim, but Plaintiffs failed to meet the heightened pleading requirements of Rule 9(b) that are applicable to fraud claims.[50]  The Court granted Plaintiffs leave to amend the complaint to more specifically allege the "who, what, when, where, and how" of Roe's alleged

---

[43] R. Doc. 2-1 at 5-8.
[44] *Id.* at 5-6 (quote at 6).
[45] *Id.* at 6-7.
[46] *Id.* at 7.
[47] *Id.*
[48] R. Doc. 2.
[49] R. Docs. 15 (Roe's motion); 16 (Bohr Energy's motion); 17 (Pavlov's motion).
[50] R. Doc. 34 at 11-19; *Apollo Holding Co., LLC v. Roe*, 2025 WL 1474738, at *5-9 (E.D. La. May 22, 2025).

misrepresentations.[51]  As to Plaintiffs' breach-of-contract claim against Roe, the Court held that it does not have personal jurisdiction for such a claim based on the Separation Agreement and Amendment, but that it would have personal jurisdiction for such a claim based on the Employment Agreement, if the Separation Agreement and Amendment are rescinded due to fraudulent inducement.[52]  Consequently, Roe's motion to dismiss was denied as to Plaintiffs' breach-of-contract claim without prejudice to his reurging the arguments once the viability of Plaintiffs' fraudulent-inducement claim is determined.[53]

With respect to Plaintiffs' breach-of-contract claim against Pavlov, the Court held that Pavlov consented to personal jurisdiction and venue by signing the First NDA that contained a forum-selection clause providing that the parties agreed to submit to jurisdiction and venue in Louisiana.[54]  The Court also held that Plaintiffs sufficiently pleaded a breach-of-contract claim against Pavlov.[55]  Accordingly, Pavlov's motion to dismiss was denied as to Plaintiffs' breach-of-contract claim.[56]

Lastly, the Court granted without prejudice the Rule 12(b)(2) motions to dismiss Plaintiffs' LUTPA claims against all three Defendants, finding that Plaintiffs did not allege "their LUTPA claims with sufficient detail for the Court to begin to evaluate the Defendants' minimum contacts under" the applicable personal jurisdiction test.[57]  The Court noted that, although it was not reaching the merits of Defendants' Rule 12(b)(6) motions concerning those claims, the Plaintiffs' "LUTPA allegations necessarily also fail[ed] to meet Rule 9(b)'s pleading requirements, which

---

[51] R. Doc. 34 at 16-17; *Apollo Holding*, 2025 WL 1474738, at *8.
[52] R. Doc. 34 at 19-23; *Apollo Holding*, 2025 WL 1474738, at *9-11.
[53] R. Doc. 34 at 22-23; *Apollo Holding*, 2025 WL 1474738, at *11.
[54] R. Doc. 34 at 23-32; *Apollo Holding*, 2025 WL 1474738, at *11-15.
[55] R. Doc. 34 at 31-32; *Apollo Holding*, 2025 WL 1474738, at *15.
[56] R. Doc. 34 at 26, 31-32; *Apollo Holding*, 2025 WL 1474738, at *13, *15.
[57] R. Doc. 34 at 32-34 (quote at 34); *Apollo Holding*, 2025 WL 1474738, at *15-16 (quote at *16).

apply to LUTPA claims that 'raise the issue of fraud.'"[58]  Thus, Plaintiffs were afforded the opportunity to amend "their petition to plead additional facts showing each Defendants' contacts with the forum related to" the LUTPA claims, as well as sufficient facts to satisfy Rule 9(b).[59]

Plaintiffs thereafter filed an amended complaint, attempting to correct the pleading deficiencies.[60]  Defendants now move to dismiss the amended complaint as to all claims against Roe and the LUTPA claims against all three Defendants.[61]

## II.    LAW & ANALYSIS

### A.  Legal Standards

#### 1.  Rule 12(b)(2) Standard

"As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional issues before considering whether a claim was stated by the complaint, although there is no requirement that jurisdictional issues be considered in a particular order."  5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1351, at 244-46 (4th ed. 2024).

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking.  Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation and alteration omitted).  When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists.  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  The allegations of the complaint,

---

[58] R. Doc. 34 at 35; *Apollo Holding*, 2025 WL 1474738, at *16.
[59] R. Doc. 34 at 34; *Apollo Holding*, 2025 WL 1474738, at *16.
[60] R. Doc. 35.
[61] R. Docs. 36; 37; 38.

except as controverted by opposing affidavits, must be taken as true, and all conflicts must be resolved in favor of the plaintiff. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Louisiana's long-arm statute extends to the limits of due process, the two inquiries collapse into the single inquiry whether the exercise of personal jurisdiction comports with due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

An individual's liberty interest is protected by federal due process through the requirement "that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (alteration omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). For purposes of personal jurisdiction, the due-process inquiry looks at whether the defendant has purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" with the forum, and whether the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The inquiry thus focuses "on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation omitted).

"There are two kinds of personal jurisdiction: 'general or all-purpose jurisdiction' and 'specific or case-linked jurisdiction.'" *Daughtry v. Silver Fern Chem., Inc.*, 136 F.4th 210, 215

(5th Cir. 2025) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For a court to exercise general jurisdiction, the defendant's contacts with the forum must be "so continuous and systematic" as to render the defendant "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*, 564 U.S. at 919). "'For an individual, the paradigm forum for the exercise of general jurisdiction is an individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 924). Neither of the individual defendants is domiciled in Louisiana or has continuous and systematic contact with the state. Bohr Energy, an LLC, has no members who are Louisiana citizens, nor does it maintain its principal place of business in Louisiana. Plaintiffs have not presented any arguments, or evidence, to the contrary. Thus, this Court lacks general jurisdiction over Defendants.

Specific jurisdiction exists when a defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In analyzing specific jurisdiction, courts employ a three-prong test to determine (1) whether the defendant purposefully directed its activities at the forum and availed itself of the privilege of doing business there, (2) whether the claim arises out of or results from the defendant's forum-related contacts, and (3) whether the exercise of personal jurisdiction is reasonable and fair. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895-96 (5th Cir. 2022). After the plaintiff establishes the first two factors, which correspond with the "minimum contacts" prong of *International Shoe*, the burden shifts to the defendant to demonstrate that an exercise of personal jurisdiction would be unfair or unreasonable. *Burger King Corp.*, 471 U.S. at 477 (citing *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). In determining reasonableness, a court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292. Specific jurisdiction is a claim-specific inquiry, and a court must analyze each defendant's forum-related contacts on a claim-by-claim basis. *Savoie v. Pritchard*, 122 F.4th 185, 194 (5th Cir. 2024); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022).

### 2. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

11

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th

Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Fraudulent-Inducement Claim against Roe

Roe contends that Plaintiffs' amended complaint does not sufficiently allege a fraudulent-inducement claim because there are no specific factual allegations supporting the conclusion that the statements he made in June 2023, about retiring due to his poor health and spending more time with his family, were false when made or that Plaintiffs actually relied upon the representations in negotiating and entering into the Separation Agreement and Amendment.[62] Further, Roe asserts that there is no indication as to what Menutis told Jean, that Jean relied on Roe's allegedly false

---

[62] R. Doc. 38-1 at 10-11, 17-18.

statements in negotiating and signing the Separation Agreement and Amendment, or that Roe had any intent that Jean would even hear his comments about the reasons for his retirement.[63] Moreover, Roe argues that the amended complaint fails to detail the precise facts of each specific misrepresentation that is said to have directly and fraudulently induced Plaintiffs to enter into the agreements executed at dates remote in time from those statements.[64]  In opposition, Plaintiffs argue that the fraudulent-inducement allegations in the amended complaint supply enough detail, at this stage of the proceeding, to satisfy Rule 9(b), "including dates, locations, and parties involved in certain of Mr. Roe's communications; how those communications reached the Plaintiffs and affected their bargaining positions; Mr. Roe's intent in making such statements; and why such statements were fraudulent and misleading."[65]  Plaintiffs further argue that it would be impossible for them to plead "all details regarding every possible fraudulent statement made by Roe during the course of his fraudulent scheme," and that requiring them to do so "would impose fact-pleading under Rule 9(b)."[66]  In his reply, Roe again emphasizes that Plaintiffs do not specifically allege that Jean heard the statements, that Roe intended for Jean to hear them, or that Jean relied on them in negotiating and signing the Separation Agreement and Amendment.[67]  Roe argues that Plaintiffs ask the Court to infer these facts which, says Roe, is insufficient to satisfy Rule 9(b).[68]  Roe also argues that any supposed reliance by Plaintiffs on such statements in entering into the Separation Agreement and Amendment is tenuous because a more plausible explanation for confecting these contracts is that they resolved "pre-existing, legally enforceable obligations and obtain[ed] mutual releases from all parties."[69]

---

[63] *Id.* at 10-11, 16-17.
[64] *Id.* at 18-19.
[65] R. Doc. 41 at 8-10 (quote at 8).
[66] *Id.* at 10.
[67] R. Doc. 48 at 1-8.
[68] *Id.* at 1-4.
[69] *Id.* at 7-8 (quote at 7).

The elements of a fraudulent-inducement claim under Louisiana law[70] are "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract." *Env't, Safety & Health Consulting Servs. v. Crest Energy Partners, L.P.*, 2015 WL 2452458, at *4 (E.D. La. May 21, 2015) (citing *Shelton*, 798 So. 2d at 64; La. Civ. Code art. 1953). In ruling on Roe's motion to dismiss the original complaint, this Court noted that Plaintiffs generally pleaded the elements of a fraudulent-inducement claim by alleging that Roe misrepresented his reasons for terminating his employment (retirement due to poor health when he was actually competing against Plaintiffs), which Roe intended would induce Plaintiffs to enter into the Separation Agreement and the Amendment, and that they would not have entered into those contracts had they known that the representations were false.[71]  But the Court also held that the fraudulent-inducement allegations in the original complaint fell short of satisfying Rule 9(b).[72]

Rule 9(b) imposes a heightened pleading standard on allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when

---

[70] Neither the Separation Agreement nor the Amendment contains a choice-of-law clause.  *See* R. Docs. 15-7; 15-8.  Roe does not argue that the law of another state should apply and continues to cite to Louisiana case law in support of his arguments against Plaintiffs' breach-of-contract claims.  *Compare* R. Doc. 38-1 at 19 (citing *French Quarter Realty v. Gambel*, 921 So. 2d 1025, 1029 (La. App. 2005)), *with* R. Doc. 31 at 7-8 (citing *Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001); *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So. 3d 246, 255 (La. App. 2009); *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 230 (5th Cir. 2018) (applying Louisiana law)).  Therefore, the Court assumes, without deciding, for purposes of this motion that Louisiana law applies to the Separation Agreement and Amendment.
[71] R. Doc. 34 at 15-16; *Apollo Holding*, 2025 WL 1474738, at *7.
[72] R. Doc. 34 at 16-17; *Apollo Holding*, 2025 WL 1474738, at *8.

and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997). Put simply, complying with Rule 9(b) requires a plaintiff to "set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quotation omitted). Thus, a plaintiff alleging fraud "cannot rely on speculation or conclusional allegations." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008).

Here, Plaintiffs' repleaded fraudulent-inducement claim meets Rule 9(b)'s heightened standard. Plaintiffs identify specific, allegedly false, statements made by Roe to specific people on specific dates. The amended complaint further alleges that Plaintiffs' management team, specifically Jean, was aware of at least one of these statements when he entered into the Separation Agreement and Amendment on Plaintiffs' behalf. This is enough to get past Rule 9(b). Whether the statements were actually false when Roe made them, what exactly Jean knew when entering into the contracts, and to what extent Jean relied upon the statements in entering into the contracts must be ferreted out in discovery. Accordingly, Roe's motion to dismiss the fraudulent-inducement claim is denied.

### C. Breach-of-Contract Claim Against Roe

This Court previously held that the personal jurisdiction for Plaintiffs' breach-of-contract claim against Roe depended upon the viability of their fraudulent-inducement claim against him.[73] Because this Court finds that Plaintiffs have sufficiently alleged a fraudulent-inducement claim against Roe, Roe's motion to dismiss the breach-of-contract claim is now denied.

---

[73] R. Doc. 34 at 22-23; *Apollo Holding*, 2025 WL 1474738, at *11.

### D.  LUTPA Claims

Defendants argue that Plaintiffs' amended complaint still fails to allege sufficient facts to support personal jurisdiction over Plaintiffs' LUTPA claims against them and that the LUTPA allegations do not satisfy Rule 9(b).[74]   They note that, in the amended complaint, Plaintiffs separated the LUTPA claims against each Defendant into individual claims, but, say Defendants, the factual allegations still do not pass muster because there are no facts alleged showing an ascertainable loss that resulted from any fraudulent conduct on the part of any Defendant.[75] Defendants assert that, in naming two Louisiana residents as their contacts with the forum with respect to the LUTPA claims, Plaintiffs allege only that the effects of Defendants' actions were felt in Louisiana, not that any Defendant undertook specific fraudulent acts directed at the forum in a purposeful manner.[76]  Defendants then intone that the LUTPA allegations lack the specific "who, what, when, where, and how" that is required to allege the fraudulent or deceptive element for each alleged act under LUTPA.[77]

Roe also argues that the amended complaint does not "specify fraudulent conduct by Roe, other than allegations to the alleged misrepresentations in 2023 and which are averred to relate to the [Separation Agreement] and Amendment rather than any competitive acts."[78]   Roe also contends that the allegations that he stole proprietary information and used it to establish Bohr Energy as a direct competitor are conclusory, broad, and non-specific to establish personal jurisdiction because they do not identify specific actions undertaken or the dates and locations of any actions.[79]  He also asserts that the allegations regarding his work in Louisiana describe past

---

[74] R. Docs. 38-1 at 20-23; 37-1 at 11-15; 36-1 at 10-14.
[75] R. Docs. 38-1 at 20-21; 37-1 at 11-12; 36-1 at 10-11.
[76] R. Docs. 38-1 at 21-22; 37-1 at 12-13.
[77] R. Docs. 38-1 at 22-23; 37-1 at 13-15; 36-1 at 12-14.
[78] R. Doc. 38-1 at 21.
[79] *Id.*

contacts with the state that do not specify tortious acts he directed at the forum as would give rise to jurisdiction over a LUTPA claim.[80]

Pavlov similarly argues that the only allegation in the amended complaint of his wrongdoing "is the single conclusion that Pavlov fraudulently induced Plaintiffs to execute the First NDA" and that allegation "is not supported by any other factual allegations and is belied by the execution of the Second NDA by AlumaPower and which was not signed by Pavlov."[81]  He further argues that there are no facts to support the allegation that he misrepresented his intentions in entering into the First NDA or that he breached it.[82]  Pavlov also argues that "Plaintiffs fail to identify any protected information that was disseminated, the date that it was disseminated, the recipient of the information, or the manner in which it was disseminated."[83] Like Roe, Pavlov contends that the allegations that he stole proprietary information and used it to establish Bohr Energy as a direct competitor are conclusory, broad, and non-specific because they do not specify actions undertaken or the dates and locations of any actions.[84]

Bohr Energy adds that the amended complaint lacks allegations "that are sufficiently particularized to allow Defendants to meaningfully compare the asserted intellectual property that is included (here, by reference only) in the amended complaint to information that is generally known or ascertainable to them and the Court."[85]  Bohr Energy contends that, without such details, it cannot discern what proprietary information was allegedly stolen and the allegations amount to nothing more than the assertion that Bohr Energy was formed to compete with Plaintiffs.[86]

---

[80] *Id.* at 22.
[81] R. Doc. 37-1 at 12.
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] R. Doc. 36-1 at 11.
[86] *Id.* at 11-12.

Plaintiffs respond that they have established sufficient minimum contacts between each of the Defendants and the forum relating to their LUTPA claims.[87]  They argue that "[a]ll of Roe's [and Pavlov's] improper and fraudulent conduct alleged in the Amended Complaint relates to a singular scheme which is directed into Louisiana and runs afoul of LUTPA."[88]  As to Roe, say Plaintiffs, that "conduct includes (1) making false representations regarding his present intent to retire from the oil and gas treatment industry due to his waning health in order to gain an unfair advantage over the Louisiana-based plaintiffs, (2) appropriation and misuse of Apollo's proprietary technology in order to directly compete with Apollo in the Louisiana market, and (3) reaching out into the Louisiana forum to poach Apollo clients located in Louisiana."[89]  And with respect to Pavlov, "[t]his conduct includes (1) making false representations to the Louisiana-Plaintiffs regarding his intention to visit the New Orleans office and the Mississippi lab in order to explore a potential business relationship when, in reality, he was planning to misappropriate such information to launch a competitive venture, (2) appropriation and misuse of Plaintiffs' proprietary technology in order to directly compete with Plaintiffs in the Louisiana market, and (3) co-signing communications pitching products created based upon Plaintiff[s'] own intellectual property with Roe directed into the Louisiana market to poach Plaintiff[s'] clients and investors, some of whom are Louisiana residents."[90]  Plaintiffs also contend that "Pavlov's continual profiting from the Louisiana-resident Plaintiffs' proprietary information and intellectual property constitutes an ongoing contact with the forum that rises above the low bar of minimum contacts."[91]

---

[87] R. Docs. 39 at 13-14; 40 at 10-13; 41 at 10-13.
[88] R. Docs. 40 at 10; R. Doc. 41 at 10.
[89] R. Doc. 41 at 10-11.
[90] R. Doc. 40 at 10-11.
[91] *Id.* at 11-12.

And for Bohr Energy, Plaintiffs assert that the company "reached out into the Louisiana forum in the course of [its] scheme to misappropriate Plaintiffs' intellectual property (1) when its principals misappropriated information belonging to a Louisiana company and met with Louisiana residents, including (as specifically alleged) Doug Adams and Robert Israel, to pitch its infringing products and (2) when Roe, acting as principal of Bohr Energy after its formation, sent fraudulent communications regarding his health and inactivity in the oil and gas industry to high-ranking members of the Louisiana-based Plaintiffs in order to run cover for his infringing business dealings."[92]  Plaintiffs also contend that Rule 9(b) should not apply to their LUTPA claim against Bohr Energy because that claim is based on Bohr Energy's "*non-fraudulent*, immoral, unethical, and unscrupulous conduct" of misusing and misappropriating Plaintiffs' intellectual property to compete in the Louisiana market.[93]  But, say Plaintiffs, if Rule 9(b) applies, they have alleged that Roe made fraudulent misrepresentations while acting as a principal of Bohr Energy.[94]  Further, Plaintiffs argue that they plead an ascertainable loss in that Defendants fraudulently profited from their misappropriation of Plaintiffs' proprietary information, technologies, and intellectual property and tried to poach Plaintiffs' clients and prospective investors.[95]

Defendants each reply in support of their motions.[96]  Roe argues that the supposed "[mis]representations as to his health were not unfairly competitive business practices and are not an actionable LUTPA claim."[97]  Roe also argues that the statements were made in 2023, outside of the one-year prescriptive period applicable to LUTPA claims.[98]  Roe reiterates that the amended complaint and opposition do not show that Defendants directed harm toward Louisiana, only that

---

[92] R. Doc. 39 at 14.
[93] *Id.* at 10-14 (quote at 10) (emphasis in original).
[94] *Id.*
[95] R. Doc. 39 at 12-13; 40 at 12; 41 at 12-13.
[96] R. Docs. 46; 47; 48.
[97] R. Doc. 48 at 9.
[98] *Id.* at 10.

they tried to compete in Louisiana, which in itself is not a LUTPA violation.[99]  Moreover, says Roe, Plaintiffs assert only vague, conclusory allegations that he was "poaching clients" and "using intellectual property," without establishing that the information he supposedly used is "protected by any existing patent or other legal protection."[100]  Such allegations do not meet Rule 9(b), continues Roe, because they fail to specify "*what* proprietary information was used, *how* its use was deceptive in communication with Adams or Israel, *what* the loss was with respect to the communications with Adams or Israel, and *when* these specific acts occurred."[101]  Roe reiterates that Plaintiffs have not pleaded facts to support an ascertainable loss, such as "the loss of a single specific client contract or investment opportunity, or any factual basis from which to infer lost profits directly resulting from Roe's alleged actions."[102]

In his reply, Pavlov argues that Plaintiffs cannot establish that the Court has personal jurisdiction for their LUTPA claim against him "by merely alleging he was part of a conspiracy with Mr. Roe," because personal jurisdiction is a defendant-specific inquiry.[103]  Pavlov repeats that Plaintiffs improperly rely on an "effects test," rather than showing that Pavlov directed activities at the forum.[104]  He also contends that Plaintiffs' LUTPA allegations against him in the amended complaint fail to meet Rule 9(b) because they do not allege "when and where he articulated his [misrepresented] intentions [in connection with the First NDA], what his exact words were, or what specific, contemporaneous facts demonstrate that his stated intentions were false at that time."[105]  Pavlov also points out that the amended complaint does not "identify what specific proprietary information [he] supposedly took" or that such information was not publicly

---

[99] R. Doc. 48 at 9.
[100] *Id.* at 10.
[101] *Id.* (emphasis in original)
[102] *Id.* at 10-11 (quote at 11).
[103] R. Doc. 47 at 2.
[104] *Id.* at 2-4.
[105] *Id.* at 5.

available patent information.[106]  Pavlov asserts that Plaintiffs' allegations describe competition, not a LUTPA violation.[107]  Pavlov reurges that Plaintiffs have not alleged an ascertainable loss because they "fail to plausibly link any alleged loss to a specific unlawful act by Pavlov."[108]  Finally, Pavlov argues that any LUTPA claim is, at least in part, prescribed because the First NDA was signed in January 2023, more than a year before suit was filed in November 2024.[109]

Like Pavlov, Bohr Energy argues in reply that Plaintiffs cannot establish that the Court has personal jurisdiction for their LUTPA claim against it by using a "'singular scheme' theory" because personal jurisdiction is a defendant-specific inquiry and, says Bohr Energy, Plaintiffs are improperly trying to use an "effects test" to establish personal jurisdiction.[110]  Bohr Energy also contends that the allegations against it aver in a conclusory fashion that Roe and Pavlov, acting as its principals, used Plaintiffs' proprietary information to poach Plaintiffs' clients, without alleging specific examples and contents of such meetings, such as "what was said, what specific deceptive representations were made, what proprietary information was disclosed, when or where those meetings took place, or whether Roe and Pavlov were acting in their corporate capacities on behalf of Bohr [Energy]."[111]  In sum, Bohr Energy argues that Plaintiffs do not allege any corporate act directed at Louisiana or any specific facts showing that an action taken by Roe or Pavlov was done on Bohr Energy's behalf.[112]  According to Bohr Energy, Plaintiffs are conflating the merits of their LUTPA claim with the jurisdictional inquiry.[113]  Further, says Bohr Energy, Plaintiffs' LUTPA claims must satisfy Rule 9(b) and they do not because specificity is lacking.[114]  Bohr Energy, too,

---

[106] *Id.*
[107] *Id.* at 5-6
[108] *Id.* at 6.
[109] *Id.*
[110] R. Doc. 46 at 2.
[111] *Id.* at 3.
[112] *Id.* at 3-4.
[113] *Id.* at 4.
[114] *Id.* at 5-6.

reasserts that Plaintiffs have not alleged an ascertainable loss because they "fail to draw a plausible causal link between any specific unfair act by Bohr [Energy] and a specific loss."[115]

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405. "A LUTPA claim must show (1) 'the plaintiff suffered an ascertainable loss; and (2) the loss must have resulted from another's use of unfair methods of competition and unfair or deceptive acts or practices.'" *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, 2022 WL 1488130, at *5 (E.D. La. May 11, 2022) (quoting *Express Lien, Inc. v. Nationwide Notice, Inc.*, 2016 WL 7097382, at *7 (E.D. La. Dec. 5, 2016)). To recover under LUTPA, "the plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (quotation omitted). Courts apply the same minimum-contacts analysis to LUTPA claims as to intentional-tort claims. *See, e.g., House of Raeford Farms of La. L.L.C. v. Poole*, 2021 WL 3673901, at *4 (W.D. La. Mar. 18, 2021) ("Here, the torts alleged against the [d]efendants are fraud, LUTPA, conspiracy to commit these and other torts, negligence, and unjust enrichment. Perpetrating fraud on a plaintiff in a forum state, whether through misrepresentation or omission, satisfies minimum contacts, even if the defendant was not physically within the forum state when the fraud was committed."). An unfair trade practice is determined on a "case-by-case basis." *Redmellon, L.L.C v. Halum*, 2025 WL 932397, at *15 (E.D. La. Mar. 27, 2025) (quoting *IberiaBank*, 907 F.3d at 839). "The defendant's motivation is nevertheless a critical factor and his 'actions must have been taken with the specific purpose of harming the competition.'" *Id.* (quoting *IberiaBank*, 907 F.3d at 839).

---

[115] *Id.* at 6-7.

"'LUTPA recognizes a claim for breach of fiduciary duty that rests on the misappropriation of information that is confidential but not a trade secret.'" *Id.* (quoting *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 795 (E.D. La. 2012)). "A plaintiff must nonetheless prove: '(1) that it possesses knowledge or information that is not generally known; (2) that it communicated the knowledge or information to the defendant under an express or implied agreement limiting the defendant's use or disclosure of the information; and (3) that the defendant used or disclosed the knowledge or information in violation of the confidence, resulting in injury to the plaintiff.'" *Id.* (emphasis omitted) (quoting *Ruby Slipper Café, LLC v. Belou*, 2019 WL 1254897, at *7 (E.D. La. Mar. 19, 2019)).

At this motion-to-dismiss stage, Plaintiffs have stated a LUTPA claim against Roe and establish that this Court has personal jurisdiction over him for that claim. Setting aside for now the alleged misrepresentations made by Roe in negotiating and entering into the Separation Agreement and Amendment, and the role they may have played in allowing Roe to unfairly compete with Plaintiffs, Plaintiffs allege that Roe made material misrepresentations to Plaintiffs (while he was employed with those Louisiana companies) in order to misuse Plaintiffs' proprietary information that he was forbidden from using under the Employment Agreement's broadly-worded provision by which Roe conveyed his intellectual property to Plaintiffs. Specifically, Roe agreed to sell to Plaintiffs "all of [his] equipment, demo units, devices, applications, intellectual property, patents pending and other property whether related to the Advanced Separation Gas Infusion System, which [Roe] developed, or otherwise" including "all of [Roe's] property and systems [then] currently in development and developed in the future, whether the Gas Infusion System or any other related or unrelated technology," along with "any use [then] currently known or

unknown for the intellectual property conveyed."[116]  On its face, this language encompasses the "proprietary information" and "technologies" that the amended complaint states Roe used in connection with, and on behalf of, Bohr Energy – more particularly, Roe's work in developing "alternative chemical technology for $H_2S$ treatment" to apply in the oil and gas industry.[117]  It is neither unreasonable nor unfair for Roe to anticipate that he would be haled into court in Louisiana to answer for his alleged theft of proprietary information to which he was privy as a result of his employment with Louisiana companies.  Moreover, Plaintiffs allege that they have suffered business losses as a result of the alleged misappropriation.  This is enough at this motion-to-dismiss stage to show personal jurisdiction for, and to state, a LUTPA claim against Roe.[118]  Similarly, because Roe is a principal of Bohr Energy, which is alleged to have profited from Roe's supposed misrepresentations and misuse of intellectual property, and Plaintiffs allege that Roe continued to commit misrepresentations after Bohr Energy was formed, it too is subject to personal jurisdiction for Plaintiffs' LUTPA claim, which is sufficiently stated against Bohr Energy at this stage.  *Cf. Trepagnier v. Crump*, 369 So. 3d 436, 440 (La. App. 2023) (holding that plaintiff did not state a LUTPA claim against a company when it failed to allege that its principal committed additional acts in violation of his fiduciary duties and LUTPA after he formed the defendant company).

Pavlov, however, is in a different boat.  Pavlov was not employed by Plaintiffs.  There are no allegations in the amended complaint explaining what non-public proprietary information he was privy to and how he misappropriated it.  Moreover, there are no factual allegations delineating how Pavlov is supposed to have misrepresented his intentions in exploring a business relationship

---

[116] R. Doc. 15-4 at 2.

[117] R. Doc. 35 at 3.

[118] Roe raised the issue of prescription in his reply, and thus the parties have not fully briefed that issue as would enable the Court to evaluate it at this time.  Moreover, courts typically do not consider issues raised for the first time in a reply.  *See, e.g.*, *Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, 2025 WL 2446283, at *14 n.5 (E.D. Tex. Aug. 25, 2025).

with Plaintiffs.  Nor is there any allegation that Roe ever told Pavlov he was using proprietary information in connection with any work for Bohr Energy.  At bottom, the LUTPA allegations against Pavlov state nothing more than that, in forming Bohr Energy, he attempted to compete with Plaintiffs, and they do not describe fraudulent activity by Pavlov directed at the forum.  Thus, Plaintiffs' LUTPA claims against Pavlov must be dismissed for lack of personal jurisdiction and failure to state a claim.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Roe's motion to dismiss (R. Doc. 38) is DENIED.

IT IS FURTHER ORDERED that Pavlov's motion to dismiss (R. Doc. 37) is GRANTED, and Plaintiffs' LUTPA claim against him is DISMISSED.

IT IS FURTHER ORDERED that Bohr Energy's motion to dismiss (R. Doc. 36) is DENIED.

New Orleans, Louisiana, this 16th day of September, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE