UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| APOLLO HOLDING COMPANY, LLC, *et al.* | CIVIL ACTION |
| VERSUS | NO. 24-2773 |
| CLIFF ROE, *et al.* | SECTION M (3) |

## ORDER & REASONS

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by plaintiffs and defendants-in-counterclaim Apollo Holding Company, LLC ("Apollo") and GAPS Technology, LLC ("GAPS") (together, "Counterclaim Defendants") and third-party defendants Chris Jean and Mike Montgomery (together, "Third-Party Defendants").[1] Defendants, plaintiffs-in-counterclaim, and third-party plaintiffs Cliff Roe, Kevin Pavlov, and Bohr Energy, LLC ("Bohr Energy") (collectively, "Counterclaim Plaintiffs") respond in opposition,[2] and Counterclaim Defendants and Third-Party Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying it in part.

### I.   BACKGROUND[4]

This saga begins in 2016 when Roe was hired by Apollo's predecessor-in-interest, Apollo Petroleum Solutions, LLC ("APS"), and executed an employment agreement (the "Employment

---

[1] R. Doc. 53.
[2] R. Doc. 57.
[3] R. Doc. 62.
[4] The background of this case has been explained more fully in prior orders. R. Docs. 34 (*Apollo Holding Co., LLC v. Roe*, 2025 WL 1474738 (E.D. La. May 22, 2025)); 49 (*Apollo Holding Co., LLC v. Roe*, 2025 WL 2652838 (E.D. La. Sept. 16, 2025)). For the remainder of this Order & Reasons, the Court will refer only to the record document citations for these prior rulings.

Agreement") by which he conveyed certain intellectual property rights to APS.[5] Thereafter, APS underwent a corporate restructuring to form Apollo, which assumed all of APS's obligations to Roe under the Employment Agreement.[6] As part of its restructuring, APS conveyed to GAPS all rights, titles, and interests it acquired from Roe under the Employment Agreement, and GAPS licensed all of its intellectual property to Apollo.[7]

In 2023, Pavlov's employer, AlumaPower Corporation ("AlumaPower"), sent him to meet with Roe at Apollo's laboratory to discuss a possible business relationship with Apollo.[8] On January 18, 2023, before meeting with Roe, Pavlov signed a nondisclosure agreement ("NDA") with Apollo.[9] On April 17, 2023, the day before Roe and Pavlov's meeting, AlumaPower, through its CEO, signed another NDA with Apollo.[10] No business arrangement between Apollo and AlumaPower resulted from Roe and Pavlov's April 18, 2023 meeting.[11]

In June 2023, Roe allegedly began telling Apollo's employees, managers, and owners that he intended to retire due to his poor and rapidly declining health, resulting from a heart condition, so he could spend more time with his family, particularly his mother and grandchild.[12] On June 21, 2023, Roe sent a formal resignation letter addressed to APS which referenced his oral resignation made on June 19, 2023, and stated that his last day of work would be July 6, 2023.[13] Then, on June 24, 2023, in a reply to a text from Dimitri Menutis, a member of APS and board member of Apollo, asking about his health, Roe stated that he was dying due to his heart issues.[14]

---

[5] R. Doc. 35 at 2.
[6] *Id.* at 3.
[7] *Id.*
[8] *Id.* at 4; R. Doc. 15-1 at 12.
[9] R. Docs. 35 at 4; 17-10.
[10] R. Doc. 17-11.
[11] R. Doc. 15-1 at 12.
[12] R. Doc. 35 at 4.
[13] *Id.* at 5.
[14] *Id.*

Roe and Apollo began negotiating a separation package that accounted for the parties' continuing obligations under the Employment Agreement.[15] Counterclaim Defendants allege that, during these negotiations, Roe continued to make statements that he could not work due to his health.[16] In September and October 2023, allege Counterclaim Defendants, Roe sent emails to individuals he met though his work at Apollo regarding chemical development work he was performing in a Bohr Energy lab.[17]

On March 29, 2024, Roe and Counterclaim Defendants executed a voluntary separation agreement (the "Separation Agreement").[18] Counterclaim Defendants allege that their assent to the terms of the Separation Agreement was induced by Roe's representations about his "waning health" and that he would be retiring from the oil and gas industry due to his poor health.[19] However, on May 13, 2024, Roe and Pavlov formed Bohr Energy.[20] In September of 2024, Roe and Counterclaim Defendants amended the Separation Agreement to modify Counterclaim Defendants' payment obligations to Roe (the "Amendment").[21] Counterclaim Defendants allege that, in executing the Amendment, they relied on Roe's representations that he had fully retired due to his poor health.[22] Nonetheless, say Counterclaim Defendants, Roe partnered with Pavlov to form Bohr Energy to compete within the oil and gas treatment industry by using Counterclaim Defendants' intellectual property and attempting to poach Apollo's clients.[23]

On November 1, 2024, Counterclaim Defendants brought this action in the 22nd Judicial District Court of St. Tammany Parish, Louisiana, asserting a fraudulent-inducement claim against

---

[15] *Id.*
[16] *Id.*
[17] *Id.* at 5-6.
[18] *Id.* at 6.
[19] *Id*.
[20] R. Doc. 15-1 at 13.
[21] R. Docs. 35 at 6; 15-8.
[22] R. Doc. 35 at 6-7.
[23] *Id.* at 7.

Roe, breach-of-contract claims against Roe and Pavlov, and claims under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401-1430, against Roe, Pavlov, and Bohr Energy.[24] Counterclaim Plaintiffs removed this case to this Court on November 27, 2024.[25]

Following removal, Counterclaim Plaintiffs filed motions to dismiss the original complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.[26] The motion was granted in part and denied in part and Counterclaim Defendants were afforded an opportunity to file an amended complaint to address certain pleading deficiencies.[27] Counterclaim Defendants filed their amended complaint and Counterclaim Plaintiffs moved to dismiss it as to all claims against Roe and the LUTPA claims against Roe, Pavlov, and Bohr Energy.[28] Again, the motion was granted in part and denied in part.[29] At this stage, Counterclaim Defendants remaining claims are a fraudulent-inducement claim against Roe; a breach-of-contract claim against Roe[30] and Pavlov; and a LUTPA claim against Roe and Bohr Energy.[31]

On October 8, 2025, Counterclaim Plaintiffs filed an answer to the amended complaint, along with their counterclaim and third-party claims.[32] They bring breach-of-contract claims against Apollo and GAPS for breach of the Separation Agreement and Amendment (Count I) and breach of the Employment Agreement (Count III); unjust enrichment claims against Apollo and

---

[24] R. Doc. 2-1 at 5-8.
[25] R. Doc. 2.
[26] R. Docs. 15; 16; 17.
[27] R. Doc. 34. For the purposes of the pending Rule 12(b)(6) motion, the Court need not recount the exact disposition of the motion to dismiss the original complaint.
[28] R. Docs. 35; 36; 37; 38.
[29] R. Doc. 49. Again, for the purposes of the pending Rule 12(b)(6) motion, the Court need not recount the exact disposition of the motion to dismiss the amended complaint.
[30] The Court held that it does not have personal jurisdiction over Counterclaim Defendants' breach-of-contract claim against Roe if it arises from the Separation Agreement and Amendment, but that it would have personal jurisdiction for such a claim based on the Employment Agreement, if the Separation Agreement and Amendment are rescinded due to fraudulent inducement. R. Doc. 34 at 19-23. Consequently, Roe's motion to dismiss the original complaint was denied without prejudice to his reurging the arguments once the viability of Counterclaim Defendants' fraudulent-inducement claim is determined. *Id.* at 22-23.
[31] *See* R. Docs. 34; 49.
[32] R. Doc. 50.

4

GAPS (Counts II and IV) as alternatives to the breach-of-contract claims alleged in Counts I and II; a defamation claim against Apollo, Jean, and Montgomery (Count V); and a LUTPA claim against Apollo and Jean (Count VI).[33] Counterclaim Defendants and Third-Party Defendants now move to dismiss the unjust enrichment claims (Counts II and IV), the defamation claim (Count V), and the LUTPA claim (Count VI).[34]

## II.  LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads

---

[33] *Id.* at 34-41.
[34] R. Doc. 53.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean*

*Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Unjust Enrichment (Counts II and IV)

Counterclaim Defendants move to dismiss Counterclaim Plaintiffs' unjust enrichment claims (Counts II and IV), arguing that unjust enrichment claims are derivative and cannot proceed when there is an alternative remedy at law, namely here, Counterclaim Plaintiffs' breach-of-contract claims (Counts I and III).[35] In opposition, Counterclaim Plaintiffs argue that courts applying Louisiana law allow unjust enrichment claims to proceed alongside breach-of-contract claims when the validity of the contracts is at issue, as it is here.[36] Counterclaim Defendants reply, arguing that the weight of authority shows that this Court should dismiss Counterclaim Plaintiffs' unjust enrichment claims now rather than wait to see if the breach-of-contract claims are viable.[37]

Louisiana Civil Code article 2298 provides the basis for an action based on unjust enrichment, or *actio de in rem verso*. Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." The Louisiana

---

[35] R. Doc. 53-1 at 5-8.
[36] R. Doc. 57 at 2-5.
[37] R. Doc. 62 at 1-2.

7

supreme court has held that the five requirements for establishing a cause of action for unjust enrichment are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995). Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if it pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery. *Walters v. MedSouth Rec. Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010). Thus, if the law provides the plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment." *Id.*

In particular, "'Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract.'" *Jones v. Admin'rs of the Tulane Educ. Fund*, 51 F.4th 101, 118 (5th Cir. 2022) (quoting *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004)). However, when the validity of the contract is in question, a plaintiff may plead an unjust enrichment claim in the alternative because it is unclear whether another remedy exists at law. *Id.* (citations omitted). Counterclaim Plaintiffs thus contend that, because the validity of the Separation Agreement and Amendment is at issue, their unjust enrichment claims should be permitted to proceed at this early pleadings stage of the litigation. But Counterclaim Plaintiffs' pleading consists of stacked alternatives, with the breach-of-contract claim under the Employment Agreement pleaded in the alternative to the breach-of-contract claim under the Separation Agreement and Amendment, and

8

the unjust enrichment claims pleaded in the alternative to both breach-of-contract claims. Consequently, properly sorted, it appears from this understanding of the pleading that at least one other remedy based on an enforceable contract (*viz.*, breach-of-contract under either the Employment Agreement or the Separation Agreement and Amendment) has been pleaded, meaning that Counterclaim Plaintiffs should have no unjust enrichment claims. Yet, because Counterclaim Defendants do not make this argument in their reply but rely exclusively on the general propositions of law concerning unjust enrichment claims set out in *Walters*, the Court will not now dismiss the unjust enrichment claims but will wait for more complete development of these arguments at a later time. At the very least, though, the unjust enrichment claims are subject to dismissal if and when it is determined that one or the other contract is valid and enforceable.

### C. Defamation (Count V)

Apollo and Third-Party Defendants move to dismiss Counterclaim Plaintiffs' defamation claim, arguing that the alleged "publication" of the supposedly defamatory statements was the filing of this suit, which they say cannot be the basis for the claim at this time.[38] They contend that a defamation claim based on allegations made in a lawsuit is premature until the suit has concluded.[39] In opposition, Counterclaim Plaintiffs point out that their counterclaim alleges that Jean and Montgomery, individually and on behalf of Apollo, separate and apart from the filing of this suit, told certain specifically identified third parties that Roe and Pavlov stole Apollo's technology and made misrepresentations to certain other third parties to harm Bohr Energy's business, which they contend is *per se* defamatory.[40] They argue that this is enough to state a viable defamation claim.[41] Apollo and Third-Party Defendants reply, reiterating their belief that

---

[38] R. Doc. 53-1 at 9-10.
[39] *Id.*
[40] R. Doc. 57 at 6-7.
[41] *Id.*

Counterclaim Plaintiffs failed to identify to whom the alleged statements were made, that they failed to identify false statements, and that Counterclaim Plaintiffs are trying to base a defamation claim on the filing of the original complaint.[42]

In Louisiana, the tort of "[d]efamation involves the invasion of a person's interest in his or her reputation and good name." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715 (La. 1999). A defamation claim has four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Johnson v. Purpera*, 320 So. 3d 374, 386-87 (La. 2021). The Louisiana supreme court has explained that "the fault requirement is generally referred to in the jurisprudence as malice, actual or implied." *Id.* at 387. "[I]n order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Id.* (quotation omitted). "If even one of the required elements of the tort is lacking, the cause of action fails." *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004).

Apollo and Third-Party Defendants have identified pleading deficiencies which, left uncured, would require dismissal of the defamation claim. First, as to the November 2024 statement that Third-Party Defendants, individually and on behalf of Apollo, "stole Apollo's technology," Counterclaim Plaintiffs fail to identify the third parties to whom the statement was made or the context of the statement as would support a conclusion that the statement is *per se* defamatory. Second, as to the March 2025 and undated statements, Counterclaim Plaintiffs fail to allege facts to indicate that the statements – which, on their face, look to be nonactionable opinions

---

[42] R. Doc. 62 at 3-5.

– were false. Counterclaim Plaintiffs will be given one opportunity to cure these pleading deficiencies.

### D. LUTPA (Count VI)

Apollo and Jean argue that Counterclaim Plaintiffs' LUTPA claim fails as a matter of law because they do not allege the "extremely narrow" range of conduct that offends public policy and that the law is aimed at preventing.[43] Apollo and Jean contend that labeling Bohr Energy as a "direct competitor" or stating that it would be "unprofitable" is not immoral, unethical, or substantially injurious and does not offend public policy so as to trigger LUTPA liability.[44] In opposition, Counterclaim Plaintiffs contend that they sufficiently alleged that Apollo and Jean engaged in unfair trade practices by telling third parties that the Counterclaim Plaintiffs stole Apollo's technology and that Bohr Energy would be unprofitable (with the design to chase away potential customers and investors), and by making other false representations about Bohr Energy to gain a competitive advantage for Apollo.[45] Apollo and Jean reply, repeating that the allegations do not charge the egregious behavior targeted by LUTPA.[46]

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405. "A LUTPA claim must show (1) 'the plaintiff suffered an ascertainable loss; and (2) the loss must have resulted from another's use of unfair methods of competition and unfair or deceptive acts or practices.'" *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, 2022 WL 1488130, at *5 (E.D. La. May 11, 2022) (quoting *Express Lien, Inc. v. Nationwide Notice, Inc.*, 2016 WL 7097382, at *7 (E.D. La. Dec. 5, 2016)). To recover under LUTPA, "the plaintiff must prove some element of fraud, misrepresentation,

---

[43] R. Doc. 53-1 at 10-11.
[44] *Id.*
[45] R. Doc. 57 at 7-8.
[46] R. Doc. 62 at 5-6.

deception or other unethical conduct." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (quotation omitted). An unfair trade practice is determined "on a 'case-by-case basis.'" *Redmellon, L.L.C v. Halum*, 2025 WL 932397, at *15 (E.D. La. Mar. 27, 2025) (quoting *IberiaBank*, 907 F.3d at 839). "The defendant's motivation is nevertheless a critical factor and his 'actions must have been taken with the specific purpose of harming the competition.'" *Id.* (quoting *IberiaBank*, 907 F.3d at 839).

At this motion-to-dismiss stage, Counterclaim Defendants have stated enough facts to go forward with their LUTPA claim. It is plausible that, if Apollo and Jean made the alleged statements knowing they were false and with the design to gain a competitive advantage for Apollo, they could fit within the narrow range of conduct LUTPA makes actionable. Thus, the Court will allow the LUTPA claim to proceed for now.

### III.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Counterclaim Defendants' and Third-Party Defendants' Rule 12(b)(6) motion to dismiss (R. Doc. 53) is GRANTED in part and DENIED in part. It is GRANTED as to Apollo and Third-Party Defendants' motion to dismiss the defamation claim, and that claim is DISMISSED WITHOUT PREJUDICE to filing an amended counterclaim and third-party demand curing the identified pleading deficiencies within 15 days of the date of this order. The motion is otherwise DENIED.

New Orleans, Louisiana, this 22nd day of January, 2026.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

12