UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| APOLLO HOLDING COMPANY, LLC ET AL. | CIVIL ACTION NO. 24-2773 |
| | SECTION "N"(3) |
| VERSUS | |
| CLIFF ROE ET AL. | |

**ORDER AND REASONS**

Before the Court is Defendant Bohr Energy LLC's ("Bohr") Motion to Compel Plaintiff Apollo Holding Company, LLC ("Apollo" or "Plaintiff"), to Provide Complete Responses to Defendant Bohr's First Set of Interrogatories (R. Doc. 100), Apollo's opposition (R. Doc. 105), and Bohr's reply (R. Doc. 106). Oral argument took place on September 29, 2026. For the following reasons, the Motion is **GRANTED**.

## I. Background

Apollo, through its predecessor-in-interest, and Defendant Cliff Roe ("Roe") jointly executed an Employment Agreement on January 29, 2016, through which Roe agreed to convey equipment and intellectual property to Apollo. This included:

> all of Employee's equipment, demo units, devices, applications, intellectual property, patents pending and other property whether related to the Advanced Separation Gas Infusion System, which Employee developed, or otherwise. This conveyance specially includes all of Employee's property and systems currently in development and developed in the future, whether the Gas Infusion System or any other related or unrelated technology. This conveyance also includes any use currently known or unknown for intellectual property conveyed.[1]

[1] R. Doc. 87 at ¶ 9.

The intellectual property relates to remediation treatment solutions for Hydrogen Sulfide (“$H_2S$”). $H_2S$—the highly flammable and toxic gas known for its rotten egg smell—is naturally present within oil and gas wells and is also a by-product of the petroleum refinery process. Apollo and plaintiff GAPS Technology, LLC[2] (“GAPS”, collectively with Apollo “Plaintiffs”), in part through Roe’s efforts, successfully developed novel technologies for use in $H_2S$ remediation.[3]

Roe resigned from Apollo on June 21, 2023, with his last date of employment set for July 6, 2023.[4] Apollo alleges Roe represented that his failing health prompted his retirement. On March 29, 2024, Roe, Apollo, and GAPS executed a Voluntary Separation Agreement, which “acknowledged Mr. Roe had conveyed intellectual property in which Apollo and. . . GAPS have exclusive ownership interests.”[5] The agreement was amended on September 5, 2024, to provide Roe with ongoing payments as a 3% distribution interest holder of Apollo.[6] Apollo alleges it agreed to this distribution interest so that Roe, believed to be in poor health, “would enjoy the benefits of a large amount of money before he passed away.”[7]

Rather than retiring, Roe and defendant Kevin Pavlov (“Pavlov”) formed Bohr Energy, LLC (“Bohr”), which also operates in the $H_2S$ remediation industry. Apollo

[2] Apollo assigned, transferred, and conveyed all rights, titles, and interests acquired under the Employment Agreement to GAPS through a corporate restructuring. *Id.* ¶ 11.
[3] *Id.* ¶ 13.
[4] *Id.* ¶ 18.
[5] *Id.* ¶ 25.
[6] *Id.* ¶ 29.
[7] *Id.*

alleges Roe: (1) provided materially misleading representations regarding his health and intent to retire from the industry; (2) breached his employment agreement by utilizing intellectual property he had conveyed to Apollos; and (3) is engaged in unfair trade practices by misappropriating the intellectual and proprietary property of Apollos in business endeavors with Pavlov and Bohr. Apollo also alleges that Pavlov's actions breached a non-disclosure agreement with Apollo (which Pavlov had entered into in connection with an Apollo site visit) and violated the Louisiana Unfair Trade Practices Act. Bohr is subject to similar allegations.

Bohr served Interrogatories on Apollo, seeking to clarify the factual basis for Apollo's claims. Bohr has categorized the interrogatories as follows:

- Identification of Alleged Promises by Roe and Pavlov;
- Identification of Intellectual Property;
- Identification of Alleged Competition; and
- Identification of Damages.[8]

Apollo objects to many of the requests, arguing that many of these contention interrogatories are premature or the information sought is within Bohr's possession, custody, or control, and that it will supplement these responses in accordance with the discovery schedule and its continued discovery obligations.[9]

---

[8] R. Doc. 100-1 at 3.
[9] R. Doc. 105 at 4, 11.

## II. Legal Standard

Unless otherwise limited by court order, Fed. R. Civ. P. 26(b)(1) defines the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A court assesses the proportionality by considering (1) the importance of the issues at stake in the litigation; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the proposed discovery in resolving the issues; and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id*. "The moving party bears the burden to establish that the materials requested are within the scope of permissible discovery, after which the burden shifts to the party resisting discovery to show why the discovery is irrelevant or otherwise should not be permitted." *Cannon v. CSX Transp., Inc.*, 2021 WL 5358758, at *1 (E.D. La. Apr. 16, 2021) (citations omitted).

Objections to a discovery request must be stated with specificity and identify whether any materials are being withheld based on that objection. Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2)(C); *Rodriguez-Meza v. Venegas*, 2020 WL 14100945, at *3 (W.D. Tex. Nov. 30, 2020). General boilerplate discovery objections are insufficient. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485-86 (5th Cir. 1990).

Under Rule 26(c)(1), courts may restrict discovery "for good cause ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." The burden rests on the party objecting to the discovery request to demonstrate good cause exists to restrict discovery. *See Cazorla v. Koch Foods of Mississippi, LLC*, 838 F.3d 540, 549 (5th Cir. 2016) (citing cases). "Discovery rules are accorded broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Discovery rules, though, are subject to the "injunction of Rule 1 that they be construed to secure the just, speedy, and inexpensive determination of every action." *Id.* (quoting Fed. R. Civ. P. 1). To that end, "the requirement of Rule 26(b)(1) that material sought be 'relevant' should be firmly applied." *Id.*

Pursuant to Rule 9(b), a fraud claimant "must state with particularity the circumstances constituting fraud or mistake." Indeed, "Rule 9(b) requires the who, what, when, where, and how to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). This is of particular import when analyzing responses to contention interrogatories. "Failure to provide a rule-compliant response to a contention interrogatory hinders the discovering party's ability to conduct follow-up discovery and to formulate a trial strategy." *V5 Techs. V. Switch, Ltd.*, 334 F.R.D. 297, 305 (D. Nev. 2019); *see also Lawman v. City & City of San Francisco*, 159 F. Supp. 3d 1130, 1140—41 (N.D. Cal. 2016) (excluding theory from summary judgment motion practice because it was not properly identified in response to contention interrogatory).

## III. Analysis

### A. Unverified Responses and External References

Pursuant to Rule 33(b)(3), parties must answer each interrogatory, to the extent not objected, "separately and fully in writing under oath." Verifications are "critical because 'interrogatories serve not only as a discovery device but as a means of producing admissible evidence.'" *Whale Capital, L.P. v. Ridgeway*, 2024 WL 838505 at *5 (E.D. La. Feb. 28, 2024), *reconsideration denied*, 2024 WL 894866 (E.D. La. Mar. 1, 2024) (internal citations omitted). Apollo's responses do not contain the requisite verification.[10] In its opposition, Apollo fails to address or otherwise resolve this issue.[11] Apollo must provide a verification for all interrogatory responses.[12]

Bohr argues that Apollo's responses impermissibly reference external documents such as the second amended complaint.[13] Bohr is correct. While Rule 33 permits references to produced business records, it does so where the records are identified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." *See also Whale Capital, L.P.*, 2024 WL 838505 at *5 (ordering supplemental responses where answers referenced a "second amended complaint" and "documents being produced").

---

[10] R. Doc. 100-4.
[11] R. Doc. 105.
[12] *See e.g.*, *Sterling v. Moran Foods LLC*, 2020 WL 14047269 at *2 (E.D. La. Apr. 29, 2020) (requiring verification); *Moore v. BASF Corp.*, 2012 WL 12990571, at *1 (E.D. La. May 2, 2012) (ordering same).
[13] R. Doc. 100-1 at 4.

In ten of its interrogatory answers, Apollo directs Bohr to the "factual allegations in their Second Amended Complaint," unspecified documents produced in this matter, and Plaintiffs' initial disclosures.[14] In one instance, these references make up the entirety of Apollo's answer.[15] References to external documents, including particularly the second amended complaint, fail to comply with Rule 33. *Calloway v. H & E Equip., Inc.*, 2019 WL 13274355, at *2 (E.D. La. May 24, 2019). To the extent Apollo's responses refer to pleadings or other discovery documents, it must supplement its answers to include the information it sought to incorporate via reference or identify the produced business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33.

## B. Interrogatories

### 1. Identification of alleged promises by Roe and Pavlov

**Interrogatory No. 5** asks Apollo to identify the specifics of Roe's alleged promises to Apollo. Apollo provided three instances, including the date and substance of alleged representations, as well as to whom it was made.[16] Apollo then went on to discuss representations made to non-parties and directed Bohr to the second amended complaint, documents to be produced, and Apollos' Rule 26 initial disclosures.[17] Apollo disputes Bohr's assertion supplementation is required at this time because it

---

[14] *See e.g.*, R. Doc. 100-4 (Apollo's Responses to Interrogatories Nos. 5-7, 10-15, and 18).
[15] *Id.* at 8.
[16] R. Doc. 100-4 at 6.
[17] *Id.* at 7.

provided substantive answers before directing Bohr to these other documents, and that contention interrogatories are premature.[18]

"It is within the court's discretion to determine the appropriate time for responding to a contention interrogatory." *Trident Mgmt. Grp., LLC v. GLF Const. Corp.*, 2017 WL 3011144 (E.D. La. July 14, 2017). While it is generally true that contention interrogatories are more appropriately served after a substantial amount of discovery, that is not always the case. *See id.* at 3. Litigation began nearly two years ago. Apollo must supplement its responses to include the alleged instances of misrepresentations, rather than pointing Bohr back to its pleadings. Bohr is entitled to discover information about these statements, which are at the heart of Apollo's fraudulent inducement claim,

**Interrogatory No. 6** asks Apollo to identify the specifics of Pavlov's alleged promises to Apollo. Apollo did not provide any response beyond referring to extraneous documents and stating it would supplement as necessary under Rule 26.[19] References to pleadings are not a sufficient response. *Calloway*, 2019 WL 13274355, at *2; *see also Adm'rs of the Tulane Ed. Fund, et al. v. Cytogel Pharma, LLC*, No. 131 Civ. 16-13987 (E.D. La. Feb. 5, 2018). Apollo must supplement its responses to provide a substantive answer.

---

[18] R. Doc. 105 at 7—8.
[19] R. Doc. 100-4 at 7—8.

### 2. Identification of Intellectual Property

**Interrogatory No. 7** states:

> Identify all patents, provisional patents, and patent applications prepared, filed, licensed by, or obtained by Plaintiffs since 2016. Please include in your identification of each the inventor(s), patent number, provisional patent number, or patent application number or reference identification number, identify all individuals involved in the research and development of the product or technology that was patented, the role of each individual, and the current employment status of each individual, and identify the date the patent application was submitted, the date the patent was obtained, and the current status of each patent, provisional patent, and patent application.[20]

Apollo provided a list of its patents, identified by number and title, then referred back to "Plaintiffs' Discovery Conference Disclosures"[21], "the documents produced in this matter", and "Plaintiffs' Initial Disclosures" before stating it would supplement this response as required.[22] Apollo failed to identify any individuals, much less their roles, or employment status. While Bohr can determine most of the requested information through the listed patents, the above information remains discoverable.

**Interrogatory No. 10** states:

> Describe in detail how Roe had been planning to compete, was competing, and/or is currently competing against Plaintiffs while using the intellectual property that he purportedly conveyed to Plaintiffs and in which Plaintiffs now have exclusive ownership as alleged in paragraph 31 of the Complaint. For each item of intellectual property which Roe is purportedly using to compete with Plaintiffs, identify the item of intellectual property, the date on which it was conveyed to Plaintiffs, and the manner in which Roe is purportedly using the item in an unlawful or actionable manner.[23]

---

[20] *Id.* at 8.
[21] R. Doc. 74.
[22] R. Doc. 100-4 at 10.
[23] *Id.* at 12.

The response describes former Apollo employee Bill White's conversation with Chris Jean,[24] explaining that "[White], Roe, and Pavlov had visited Major Midstream to test Roe's gas blend derived from Apollo's patented technology."[25] The response also details Apollo's knowledge of documents referencing Bohr's chemical blends or formulations and treatment processes "that are the same or substantially similar to the technology developed by Roe while employed by Apollo and conveyed to Plaintiffs."[26] Apollo has identified fourteen separate patents or provisional patents related to its remediation technologies.[27] Apollo fails, however, to specify which of the patents or other technologies were utilized in these demonstrations or documents. Apollo must supplement its response to Interrogatory 10.

**Interrogatory No. 11** states:

> Describe the manner in which Bohr is purportedly competing with Plaintiffs in the oil and gas treatment industry using the intellectual property conveyed to Plaintiffs as alleged in paragraph 32 of the Complaint, including a description of all intellectual property purportedly being utilized by Bohr, the date on which the intellectual property was conveyed to Plaintiffs, and the manner in which Bohr is purportedly using the intellectual property.[28]

Apollo's response is insufficient for two reasons. One, it improperly refers to the second amended complaint.[29] As discussed, these references are not sufficient under

[24] Manager of Apollo and Board member of GAPS. R. Doc. 100-4 at 4.
[25] *Id.* at 12.
[26] *Id.* at 13.
[27] *Id.* at 8-10.
[28] *Id.* at 13.
[29] *Id.* at 14.

Rule 33. Further, Apollo responds that it is "in possession of communications and documents which demonstrate that Bohr Energy, together with Roe and Pavlov, are marketing that intellectual property to third parties in order to wrongfully profit from [Apollo's] intellectual property."[30] Apollo must supplement its response and, to the extent it has not, produce these communications and documents and describe them "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33; *Whale Capital, L.P. v. Ridgeway*, 2024 WL 838505 at *5 (E.D. La. Feb. 28, 2024).

**Interrogatory No. 12** states:

> Describe the manner in which Pavlov is purportedly competing with Plaintiffs in the oil and gas treatment industry using the intellectual property conveyed to Plaintiffs as alleged in paragraph 32 of the Complaint, including a description of all intellectual property purportedly being utilized by Pavlov, the date on which the intellectual property was conveyed to Plaintiffs, and the manner in which Pavlov is purportedly using the intellectual property[31]

Apollo's response, similar to its response to Interrogatory No. 11, refers to the second amended complaint, documents to be produced, and alludes to documents and email communications involving Pavlov that demonstrate what intellectual property was misappropriated.[32] This response is insufficient for the same reasons as Apollo's response to Interrogatory No. 11. Apollo must supplement its response.

---

[30] *Id.*
[31] *Id.*
[32] *Id.*

**Interrogatory No. 13** asks Apollo to identify all intellectual property that Roe conveyed to Apollo, including:

> the date of the conveyance, the manner in which Plaintiffs claim that Roe allegedly misused or is continuing to use any of that property, the date of development of the intellectual property, the individuals involved in the development of the intellectual property, the patent numbers (if any), and whether the intellectual property was marked as proprietary or confidential.[33]

Apollo objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case, arguing it would require a review of "a virtually infinite universe of documents and communications."[34] The remainder of Apollo's response impermissibly refers to the second amended complaint and the employment agreement referenced therein, documents to be produced, and Apollo's initial disclosures.[35] At this stage of litigation, Bohr is entitled to be put on notice as to what specific intellectual property Apollo alleges Roe had conveyed and is now misusing. *See V5 Techs. V. Switch, Ltd.*, 334 F.R.D. 297, 304 (D. Nev. 2019) ("having put those trade secrets and intellectual property rights at issue. . . A contention interrogatory seeking identification of the trade secrets and intellectual property on which the [claim] is premised is within the scope of permissible discovery."); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D. N.Y. May 25, 2007) ("plaintiffs are ordered to disclose the facts and documents that support the allegations in their complaint").

[33] *Id.* at 15.
[34] *Id.*
[35] *Id.*

This case was filed in November 2024, and the parties have engaged in extensive discovery. While Apollo need not "articulate theories which have not yet been fully developed", it must supplement its response to (i) include the information it sought to include via reference to outside materials and (ii) produce and identify the "evidence" in its possession, custody, or control that it referenced in its response to Interrogatory No. 14. *Id.*; *see also Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 650 (D. Kan. Dec. 13, 2011) ("the Court finds no persuasive reason for Defendants to defer their answers . . . Defendants should answer these interrogatories as fully as they can, keeping in mind their continuing obligation to supplement their discovery responses as additional or different information becomes available.").

The objection is overruled and Apollo must supplement its response to include the intellectual property which it alleges Roe misused or is continuing to misuse, keeping in mind its ongoing obligations to supplement its responses.

### 3. Identification of Alleged Competitive Conduct

**Interrogatory No. 14** asks Apollo to identify all information and intellectual property disclosed to Pavlov that he used to compete against Apollo. Apollo's Answer to Interrogatory No. 14 states, in part:

> Further, Apollo has evidence that Roe disclosed this information subsequent to the termination of his employment with Apollo because Pavlov is a party to various emails containing content which indicate that Pavlov intended to market and disclose Apollo's proprietary information and intellectual property to third parties and to use that information to compete with Apollo[36]

[36] *Id.* at 16.

This response fails to (i) provide or otherwise identify these emails by date or time, or (ii) detail what specific proprietary information or intellectual property was included in the emails. For the reasons explained above, Apollo must supplement this response to include the information it sought to incorporate via reference and the underlying factual bases for those allegations.

**Interrogatory No. 15** asks Apollo to "describe how Bohr directly competed with Apollo and/or GAPS."[37] The substantive portion of Apollo's response identifies documents it alleges were distributed to Apollo and/or GAPS' clients that relate to Apollo's chemical blends and related treatment processes.[38] Apollo must supplement this response to include the information it sought to incorporate via reference and the underlying factual bases for those allegations.

**Interrogatory No. 18** asks Apollo to identify "each alleged misrepresentation by Mr. Roe, including the date, the person to whom it was made, and the specific words used."[39] Apollo objected, arguing that the Interrogatory is ". . . unduly burdensome to the extent it seeks a verbatim recitation of 'specific words' for 'each and every' alleged misrepresentation, and as calling for information beyond what is proportional to the needs of the case."[40] Apollo alleges a fraudulent inducement claim against Mr. Roe.[41] In claims based in fraud, "Rule 9(b) requires the who, what, when, where, and how to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d

[37] R. Doc. 100-4 at 17.
[38] *Id.*
[39] *Id.* at 18.
[40] *Id.* at 19.
[41] R. Doc. 87.

719, 724 (5th Cir. 2003). While Apollo may not recall the specific wording of statements from years ago, Apollo must supplement its response to detail at minimum the written misrepresentations it has possession, custody, control of; the substance of spoken communications to the best of its ability (keeping in mind its ongoing obligations); and identify the documents to which it is referring. *See e.g.*, *In re Bertucci Contracting Co., LLC*, 2013 WL 5935154, at *5 (E.D. La. Nov. 5, 2013) ("claimants cannot merely point to other vast repositories of documents, deposition transcripts, state-court pleadings, etc. and inform defendants to search the documents for the information that they want."); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D. N.Y. May 25, 2007) (explaining that contention interrogatories "'may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts.'").

**Interrogatory No. 21** states:

> explain what proprietary information or intellectual property that Apollo or GAPS contends it owns or enjoys exclusive legal rights to use, or any research and development performed by Apollo or GAPS, if any, involving electrochemical power generation in the context of contaminant remediation vis-à-vis the oil and gas industry.[42]

Apollo's answer, in part, states "[t]he information provided to Pavlov pursuant to the NDA has been used by him and the other Defendants as set forth in the Complaint."[43]

[42] R. Doc. 100-4 at 23.
[43] *Id.*

Apollo must supplement its answer to describe the details it sought to incorporate via reference.

#### 4. Identification of Damages

**Interrogatory No. 20** states:

> Separately for each cause of action asserted by Plaintiffs, please identify each category of damages Plaintiffs are seeking (i.e., actual or compensatory damages, unjust enrichment, entitlement to a reasonable royalty, and/or any other form of damages), and further state the theories of recovery, factual support for those theories, and computations or damages within each category, and identify the witnesses and the evidence Plaintiffs will rely upon in support of same.[44]

Following oral argument and a status conference, the Court ordered Apollo to supplement its response to Interrogatory No. 20 and its Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii).

### C. Attorneys' Fees

Bohr requests attorneys' fees and costs associated with its Motion.[45] The Court will not award attorneys' fees at this time but will **HOLD IN ABEYANCE** Bohr's request pending further developments in discovery.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Bohr's Motion to Compel (Rec. Doc. 100) is **GRANTED**. Apollo is ordered to supplement their interrogatory responses as set forth herein, including with a verification, no later than October 20, 2026.

---

[44] *Id.* at 22.
[45] R. Doc. 100 at 7.

New Orleans, Louisiana, this 6th day of October, 2026.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**